IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


CARLOS A. ORTEGA, JR.,        )
                              )
        Plaintiff,            )
                              )        CIVIL ACTION NO.
        v.                    )        2:07cv368-MHT
                              )           (WO)
STEPHEN BROCK,                )
BIG TIME "WINGS" SPORTS       )
GRILL, INC., and             )
CHARLES W. GOGGINS,           )
                              )
        Defendants.           )

OPINION AND ORDER

Plaintiff Carlos A. Ortega, Jr. brings this lawsuit

against defendants Stephen Brock, Big Time "Wings" Sports

Grill, Inc., and Charles W. Goggins. Seeking to invoke

federal-question jurisdiction under 28 U.S.C. § 1331 and

supplemental jurisdiction under 28 U.S.C. § 1367(a),

Ortega asserts Fourth Amendment claims (as enforced

through 42 U.S.C. § 1983) against Brock, a Chilton County

sheriff's deputy, and supplemental state-law claims for

assault and battery against all three defendants. Now

before the court are motions to dismiss filed by Big Time and Goggins, who argue that Ortega has failed to state a claim against them upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), and that this court lacks subject-matter jurisdiction over the claims against them, Fed. R. Civ. P. 12(b)(1).  For the reasons that follow, those motions will be denied.

## I. MOTION-TO-DISMISS STANDARD

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, <u>Duke v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," <u>Bell Atl. Corp.</u>

2

v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007),
"only enough facts to state a claim to relief that is
plausible on its face," id. at 1974.

A motion to dismiss may be granted as to only part of
a complaint and denied as to the remainder. See, e.g.,
Chepstow Ltd. v. Hunt, 381 F.3d 1077 (11th Cir. 2004)
(reversing district court's dismissal of some of
plaintiff's claims, while affirming dismissal of other
claims); Decker v. Massey-Ferguson, Ltd., 681 F.2d 111,
115 (2d Cir. 1982) ("a Rule 12(b)(6) motion to dismiss
need not be granted nor denied in toto but may be granted
as to part of a complaint and denied as to the
remainder"); see also 5C Wright & Miller, Federal
Practice and Procedure § 1358 (3d ed. 2004).

## II. FACTUAL BACKGROUND

The relevant facts as alleged by Ortega in his
amended complaint[1] are as follows: On May 1, 2002, at

---

1.  Although Goggins's motion to dismiss was filed
(continued...)

approximately 1:00 a.m., Ortega was a patron at Big Time, a sports bar and grill in Chilton County, Alabama. Also present were its owner, Goggins; Brock, who was in his police uniform; and an unnamed patron who was wearing what is described in the amended complaint as a "police t-shirt." Am. Compl. (doc. no. 19) at 2.

Goggins and Brock both told the unnamed patron to remove the police t-shirt. Brock added that the patron was committing the crime of impersonating a police officer and threatened to arrest him if he did not remove his t-shirt. Ortega, apparently trying to defuse the situation, offered to take the t-shirt outside. "Suddenly and without warning, Brock began to assault [Ortega] by choking him and dragging him outside the bar. [Ortega] was then thrown on the concrete." Id.

Ortega brings four counts against Brock: excessive force in violation of the Fourth Amendment as enforced

---

1. (...continued)
before Ortega amended his complaint, the court construes it as a motion to dismiss the amended complaint. Big Time's motion was filed after the complaint was amended.

through 42 U.S.C. § 1983; unreasonable seizure in violation of the Fourth Amendment as enforced through § 1983; assault under state law; and battery under state law.

Additionally, Ortega asserts that Big Time and Goggins are vicariously liable, under the theory of respondeat superior as recognized by state law, for the assault and battery committed by Brock. See Plaisance v. Yelder, 408 So.2d 136 (Ala. 1981) (employers liable for assault and battery by employees). According to Ortega, "Goggins allowed Brock to act as a bouncer for the bar." Id. at 2. Big Time and Goggins have filed the pending motions to dismiss.


III. DISCUSSION

Big Time and Goggins present two arguments as to why the claims against them should be dismissed. The first argument, which relies on Alabama state tort law, is that Ortega has failed to state a claim against them upon

which relief can be granted.  Fed. R. Civ. P. 12(b)(6).
The second argument, which relies on federal law, is that
this court lacks subject-matter jurisdiction over the
state-law claims against them.  Fed. R. Civ. P. 12(b)(1).

### A. Failure to State a Claim

The court begins with the argument that Ortega's
amended complaint fails to state a claim against Big Time
and Goggins upon which relief can be granted.  Fed. R.
Civ. P. 12(b)(6).  Ortega seeks to hold Big Time and
Goggins vicariously liable, under a theory of <u>respondeat
superior</u>, for Brock's alleged state-law torts against
him.

The general rule of <u>respondeat superior</u>, or master-
servant liability, is that the master is vicariously
liable for torts, including assault and battery,
committed by the servant in the line and scope of the
latter's employment.  <u>Plaisance v. Yelder</u>, 408 So.2d 136
(Ala. 1981).  Alabama law narrowly defines the line and

scope of such employment as it pertains to off-duty police officers moonlighting as private security guards. In Whitely v. Food Giant, Inc., 721 So.2d 207 (Ala. Civ. App. 1998), the court affirmed summary judgment in favor of an off-duty police officer's private employer sued for assault and battery under the theory of respondeat superior. According to that court, "when an off-duty police officer witnesses an offense for which the perpetrator is arrested, the officer's status changes, and he is then acting in his capacity as a police officer and not his capacity as a security guard." 721 So.2d at 209 (citing Dinmark v. Farrier, 510 So.2d 819 (Ala. 1987)).[2]

In this case, even if Brock were acting as a "bouncer" for the bar as Ortega alleges, Whitely limits

_____

2. For an in-depth discussion of master-servant liability for the torts of off-duty police officers employed as security guards, see White v. Revco Discount Drug Centers, Inc., 33 S.W.3d 713 (Tenn. 2000); see also Lovelace v. Anderson, 785 A.2d 726, 746 n.8 (Md. 2001) (suggesting that Alabama is unusual to relieve the employer of liability whenever the officer witnesses unlawful conduct).

the circumstances under which his employers would be
vicariously liable.  If Brock's status changed to police
officer before he assaulted Ortega, then under Whitely he
was no longer acting in the line and scope of his
employment as an agent for Big Time and Goggins.  If that
is so, then Big Time and Goggins are not vicariously
liable for Brock's conduct and Ortega has failed to state
a claim against them upon which relief can be granted.
Fed. R. Civ. P. 12(b)(6).

The court now examines Ortega's amended complaint to
determine whether his state-law claims against Big Time
and Goggins are due to be dismissed under Whitely.  In
doing so, the court notes that the Whitely court did not
reject the respondeat superior claims until the summary-
judgment stage, having previously reversed the trial
court's dismissal of those claims at the motion-to-
dismiss stage.  Whitely v. Food Giant, Inc., 693 So.2d
502 (Ala. Civ. App. 1997).  At the motion-to-dismiss
stage, the Alabama appellate court held that the security

8

guard's status did not change unless there was probable cause to make a lawful police arrest.  Id. at 505. Construing the complaint in the plaintiff's favor, the court could not say that the security guard witnessed a crime and was thereby transformed into an on-duty officer of the law.  Id.

This court must also construe Ortega's amended complaint in his favor, and in doing so this court is also unable to conclude that Brock had any lawful reason to marshal his police powers to subdue Ortega.  According to the amended complaint, when Ortega offered to take another patron's t-shirt outside, Brock suddenly choked him, dragged him out of the bar, and threw him on the concrete.  Given these facts, it is highly plausible that Brock's status never changed from bouncer to police officer, making his private employers liable for his tortious conduct under a theory of respondeat superior. Accordingly, Ortega's claims against Big Time and Goggins are not due to be dismissed under Rule 12(b)(6).

## B. Lack of Subject-Matter Jurisdiction

Big Time and Goggins's argument for dismissal does not end there.   The court now turns to their second argument for dismissing the claims against them: lack of subject-matter jurisdiction.   Fed. R. Civ. P. 12(b)(1). Pursuant to 28 U.S.C. § 1367(a), Ortega seeks to invoke this court's supplemental jurisdiction over Big Time and Goggins.   Section § 1367(a) provides:

> "Except as [otherwise] provided ..., in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.   Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

In their motions to dismiss, Big Time and Goggins essentially argue that this court lacks subject-matter jurisdiction over the state-law claims against them because Ortega's amended complaint lacks the federal-

question 'hook' the court requires in order to exercise supplemental jurisdiction over state-law claims.

## 1. <u>Pendent-Party Jurisdiction</u>

Prior to the enactment of 28 U.S.C. § 1367 in 1990, federal courts debated the propriety of "pendent party jurisdiction--in which a plaintiff with a federal claim against one defendant appends a state-law claim, arising from a common nucleus of facts, against <u>another defendant</u>, who could not otherwise be sued in a federal court." Richard H. Fallon, Jr. et al., <u>Hart and Wechsler's The Federal Courts and the Federal System</u> 924 (5th ed. 2003). The United States Supreme Court rejected pendent-party jurisdiction in <u>Finley v. United States</u>, 490 U.S. 545 (1989), but Congress statutorily overruled <u>Finley</u> the following year when it enacted the supplemental-jurisdiction statute, 28 U.S.C. § 1367. <u>Id.</u> at 925; <u>Palmer v. Hosp. Auth. of Randolph County</u>, 22 F.3d 1559, 1566-67 (11th Cir. 1994). Consequently, pendent-

party jurisdiction is now cognizable as a form of supplemental jurisdiction under 28 U.S.C. § 1367(a).

In this case, Ortega asserts pendent-party jurisdiction over Big Time and Goggins. The only arguable bases for this court's original jurisdiction are the federal § 1983 claims against Brock. Applying § 1367(a), so long as this court has original jurisdiction over this case, it also has jurisdiction to consider state-law claims against Big Time and Goggins that form part of the same case or controversy. When "each claim involves the same facts, occurrences, witnesses, and evidence[,] [t]his commonality is sufficient to satisfy" the constitutional case-or-controversy requirement of § 1367(a). <u>Palmer</u>, 22 F.3d at 1566. Here, the federal claims against Brock and the state-law claims against Big Time and Goggins clearly involve the same facts, occurrences, witnesses, and evidence. Therefore, it would seem an open-and-shut case

that this court has supplemental jurisdiction over the state-law claims against those defendants.


## 2. Big Time and Goggins's Argument

According to Big Time and Goggins, things are not so simple.  The court's supplemental jurisdiction over the state-law claims depends on its original jurisdiction over the federal claims.  And if factual predicates of the state-law claims necessarily negate the merits of the federal claims, they argue, then the court's original jurisdiction disappears, along with its supplemental jurisdiction over the state-law claims.

To put things more concretely, Big Time and Goggins argue that, under the <u>Whitely</u> rule, Brock was acting either in his capacity as a police officer or in his capacity as a bouncer--but not both.  In other words, even if the facts of Ortega's amended complaint support the state-law claims against Big Time and Goggins, then that means Brock was acting in his capacity as a bouncer

at the bar, not in his capacity as a police officer.  If
he was not acting in his capacity as a police officer,
then there is no basis for a federal § 1983 claim against
Brock.  And if there is no basis for a federal claim,
then the court has no supplemental jurisdiction over the
state-law claims.  Therefore, the argument goes, the only
circumstances under which Ortega can state a claim
against Big Time and Goggins are those in which this
court lacks subject-matter jurisdiction to adjudicate
them.


### 3. <u>Analysis</u>

There are two reasons why the court must reject Big
Time and Goggins's creative jurisdictional argument.  The
first is because <u>Whitely</u>, a state-law case, does not
describe federal law under § 1983.  The second is because
jurisdiction does not disappear when a claim lacks merit.
The court explains these reasons is detail below.

### a. 42 U.S.C. § 1983

Because of <u>Whitely</u>, Big Time and Goggins argue that a police officer who acts in his capacity as a private security guard and thereby subjects his private employer to state-law tort liability cannot simultaneously act in his capacity as police officer and thereby subject himself to federal § 1983 liability.  The flaw in that argument is that <u>Whitely</u> is authoritative only so far as it interprets liability under state law.  Liability under 42 U.S.C. § 1983 is a question of federal law.[3]

_____

3.  Section 1983 is the modern-day codification of § 1 of the Civil Rights Act of 1871, also known as the Ku Klux Klan Act.  <u>Monroe v. Pape</u>, 365 U.S. 167 (1961).  It provides as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper
> (continued...)

15

As it turns out, liability under § 1983 is <u>not</u> co-terminous with the conditions that cause an off-duty officer's status to change from security guard to police officer under <u>Whitely</u>. In <u>Whitely</u>, the court held that an officer's status remains as private security guard unless and until he witnesses a crime that allows him to make a lawful arrest. <u>Whitely</u>, 693 So.2d at 505. Under § 1983, however, a police officer can be held liable for damages when he does <u>not</u> witness a crime but abuses his authority under color of law. <u>Monroe v. Pape</u>, 365 U.S. 167, 171-72 (1961), <u>overruled in part on other grounds</u>, <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 663 (1978); <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1303 (11th Cir. 2001).

According to Ortega's amended complaint, Brock was wearing his police uniform and, just before assaulting Ortega, threatened to arrest the unnamed patron for

---

3.    (...continued)
      proceeding for redress."

42 U.S.C. § 1983.

impersonating a police officer. These facts strongly suggest that Brock was acting under color of law. <u>See Edwards v. Wallace Cmty. Coll.</u>, 49 F.3d 1517, 1523 (11th Cir. 1995) ("The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual."); <u>Bouye v. Marshall</u>, 102 F.Supp.2d 1357, 1362 (N.D. Ga. 2000) (Thrash, J.) (police officer was acting under color of state law while working as a private security guard and wearing his police uniform). However, under <u>Whitely</u>, if Brock did not have any lawful basis for acting in his capacity as police officer, then he also remained an agent of his private employer and thereby subjected Big Time and Goggins to <u>respondeat superior</u> liability. <u>Whitely</u>, 693 So.2d at 505. Therefore, it is possible for a police officer to be liable under 42 U.S.C. § 1983 even though under Alabama law his status did not change from security guard to

17

police officer so as to immunize his private employer from master-servant liability.

The upshot is that it is logically possible, and facially plausible on the facts of the amended complaint, for all the defendants in this case to be liable: Brock could be liable under § 1983 and Big Time and Goggins could be liable under state law. Because that would represent a classic case of supplemental jurisdiction, Big Time and Goggins's motions to dismiss for lack of jurisdiction are due to be denied.

## b. Supplemental Jurisdiction

Even if Big Time and Goggins were correct in their either/or interpretation of Brock's liability under § 1983 and state law, this court would still not be deprived of supplemental jurisdiction over the assault and battery claims against them. Big Time and Goggins do not deny the general proposition that Ortega is entitled to plead inconsistent claims in the alternative; that is,

18

there is generally speaking nothing wrong with pleading
two claims each of which entails the negation of the
other claim, so long as one does not intend to win on
both. Fed. R. Civ. P. 8(e)(2) (allowing the pleading of
inconsistent claims in the alternative); <u>Citizens & S.
Nat'l Bank v. Am. Sur. Co. of New York</u>, 347 F.2d 18, 23
(5th Cir. 1965).[4] Rather, they argue that in a case such
as this one, where the court's supplemental jurisdiction
over state-law claims is based on its original
jurisdiction over federal claims, <u>see</u> 28 U.S.C.
§ 1367(a), the plaintiff cannot plead state-law claims
factually inconsistent with the federal claims, because
if the state-law claims have merit then the court would
lack the original jurisdiction it needs to assume
supplemental jurisdiction over them.

_____

   4. In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th
Cir. 1981) (en banc), the Eleventh Circuit Court of
Appeals adopted as binding precedent all of the decisions
of the former Fifth Circuit handed down prior to the
close of business on September 30, 1981.

The flaw in this argument is that a court is not deprived of original jurisdiction over a claim by virtue of that claim's lack of merit.  That is, there is a difference between saying that a plaintiff cannot prevail on a claim and saying that the court lacks subject-matter jurisdiction over it.  The distinction between these two concepts is inherent in the distinction between Federal Rules of Civil Procedure 12(b)(1) and 12b)(6).[5]  Indeed, a court is not competent to assess the merits of a claim unless it has jurisdiction to do so.  Once the court decides that the claim lacks merit, it does not follow that the court did not have jurisdiction.  Therefore, Big Time and Goggins are incorrect as a matter of federal jurisdictional law when they argue that the court lacks original jurisdiction over a federal claim whenever the

---

[5]    "[T]he following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, ... (6) failure to state a claim upon which relief can be granted...."  Fed. R. Civ. P. 12(b).

facts are such that the claim cannot be sustained.  See Bell v. Hood, 327 U.S. 678, 682 (1946).

Big Time and Goggins's jurisdictional argument is also irreconcilable with the supplemental-jurisdiction statute itself.  In enacting § 1367, Congress clearly intended to enable federal courts to retain jurisdiction over state-law claims even after the federal claims forming the basis for the court's original jurisdiction had been dismissed, either as meritless or on other grounds: "The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...."  28 U.S.C. § 1367(c)(3) (emphasis added).  If Congress had intended to limit supplemental jurisdiction to cases where the federal claims had merit, then dismissal under § 1367(c)(3) would be mandatory, not permissive.  See Valencia v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) ("In providing that a district court 'may' decline to exercise such

jurisdiction, this subsection is permissive rather than mandatory.") . Thus, the plain language of the supplemental-jurisdiction statute makes it clear that the court does not lack subject-matter jurisdiction over a pendent-party claim simply because the federal claims forming the basis for the court's original jurisdiction lack merit.

The only authority Big Time and Goggins cite to support their jurisdictional argument is a single unpublished decision from the Northern District of Illinois. <u>Printing Indus. of Illinois Employment Benefit Trust v. Timely Press</u>, 2001 WL 303546 (N.D. Ill. 2001) (Darrah, J.) . Admittedly, that case does support Big Time and Goggins's position here; the district court dismissed a supplemental breach-of-contract state-law claim that the counterclaimant pleaded as an inconsistent alternative to its federal ERISA claim in case ERISA did not govern the dispute. 2001 WL 303546 at *3. This court, however, disagrees with the <u>Printing Industry</u>

court's reasoning.  Instead, this court would suggest that another case, Tennessee Gas Pipeline Co. v. Mississippi Central Railroad Co., 164 F.Supp.2d 823 (N.D. Miss. 2001) (Davidson, J.), correctly states the law.  In Tennessee Gas, the plaintiff gas company sought a declaratory judgment under state law that the defendant railroad company did not possess fee-ownership rights in certain property and as a consequence did not need to compensate the railroad company in order to lay pipelines there.  "Then, in the alternative, the Plaintiff argue[d] that, if the Defendant Railroad does possess fee ownership of the subject properties, the Plaintiff has the right, under federal law, to condemn the land."  164 F.Supp.2d at 829.  The court held that it had supplemental jurisdiction over the state-law claims even though they were pled in the alternative to, and were inconsistent with, the federal claims.  Id.

Here, the situation is no different.  This court clearly has original subject-matter jurisdiction over

23

Ortega's federal § 1983 claims against Brock.  28 U.S.C.

§ 1331.  That original jurisdiction would not be lost by

the existence of facts that would preclude Brock's § 1983

liability.  Therefore, even if Ortega could prevail on

his state-law claims against Big Time and Goggins only if

he were unable to prevail on the § 1983 claim against

Brock, this court has supplemental jurisdiction over

those state-law claims pursuant to 28 U.S.C. § 1367(a).

Accordingly, the motion to dismiss for lack of subject-

matter jurisdiction is due to be denied.


### 4. Ability to Decline Jurisdiction

In the alternative, Big Time and Goggins request that

the court decline to exercise supplemental jurisdiction

over Ortega's state-law claims against them.  According

to the supplemental-jurisdiction statute,

> "district courts may decline to exercise
> supplemental jurisdiction over a claim
> ... if--
>
> (1) the claim raises a novel or complex
> issue of State law,

24

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

28 U.S.C. § 1367(c).

The court finds that none of these four preconditions applies at this time.  The state-law claims for assault and battery against Big Time and Goggins do not raise a novel or complex issue of state law, nor do they substantially predominate over Ortega's federal § 1983 claims against Brock.  Obviously, the court has not dismissed the § 1983 claims.  Furthermore, there are no exceptional circumstances and other compelling reasons for declining jurisdiction.

Because § 1367(a) provides that the court "shall" have supplemental jurisdiction over related state-law claims except (in relevant part) as provided in

25

§ 1367(c), this court is without authority to decline to exercise supplemental jurisdiction in this case unless one of the four preconditions set out in subsection (c) is met. <u>Palmer</u>, 22 F.3d at 1569 ("supplemental jurisdiction <u>must</u> be exercised in the absence of any of the four factors of section 1367(c)"). Therefore, it would be improper to dismiss the pendent-party claims at this time.

* * *

Accordingly, it is ORDERED as follows:

(1) Defendant Charles W. Goggins's motion to dismiss (doc. no. 8) is denied.

(2) Defendant Big Time "Wings" Sports Grill, Inc.'s motion to dismiss (doc. no. 25) is denied.

DONE, this the 7th day of August, 2007.

　　　　/s/ Myron H. Thompson　　
UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1. **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

   (b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

   (c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

   Rev.: 4/04

2.  **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a)  **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b)  **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c)  **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d)  **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e)  **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.  **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).