IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | | |
|---|---|---|
| **CARLOS ORTEGA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **2:07-CV-368** |
| | * | |
| **STEPHEN BROCK, et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MOTION TO ALLOW COMPLAINT IN INTERVENTION FOR PARTICIPATION IN DISCOVERY AND/ OR FOR DETERMINATION OF COVERAGE ISSUES

COMES NOW, Alfa Mutual Insurance Company (hereinafter "Alfa") and respectfully moves the Court to allow it to intervene for participation in discovery and/ or for determination of coverage issues pursuant to *Federal Rules of Civil Procedure* Rules 24(b)(2), 42(b) and 49. Under *Federal Rules of Civil Procedure* Rule 24(b)(2), the Court has the discretion to allow a permissive intervention when it is evident that the intervener's "claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2)(2006). Significant and numerous questions of law and fact do exist regarding the matters set forth in the underlying complaint and the complaint in intervention. This case is appropriate for Alfa's intervention because of the common questions and because this intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b)(2)(2006). The Court can, by allowing this intervention, achieve judicial economy, prevent delay in the ultimate resolution of the currently pending case, and in resolution of these coverage issues and foster the smooth and economic operation of the judicial process in promoting justice. The Court could, if necessary, allow the

parties to submit limited interrogatories to the jury in the underlying case in an effort to simplify the determination of coverage, if the coverage issues are not determined at mediation or otherwise resolved during discovery. *Restor-A-Dent Dental Laboratories, Inc. v. Certified Allow Products, Inc.*, 775 F. 2d 871, 877(2d Cir. 1984). The Court, of course, would bifurcate any potential trial so no prejudice would be visited upon the Defendants in this matter. *Universal Underwriters Ins. Co. v. East Central Ala. Ford-Mercury, Inc. et al.*, 574 So. 2d 716, 723-24 (Ala. 1990). This bifurcation also promotes the ends of justice and judicial economy. Indeed, it promotes economy in litigation expense for the current parties.

Exhibit "1" hereto is a copy of a Complaint in Intervention for participation in discovery and/ or determination of coverage issues on behalf of Alfa. Counsel for Alfa respectfully requests that the Court grant this Motion and allow the filing of this Complaint and Alfa's participation in discovery in the underlying case or in the alternative solely allow Alfa to participate in discovery in the underlying case.

S. MARK DUKES (ASB-9697-U77S)
MEGAN K. MCCARTHY (ASB-7279-M71K)
Counsel for Alfa Mutual Insurance Company

OF COUNSEL:
Nix Holtsford Gilliland
     Higgins & Hitson, P.C.
Post Office Box 4128
Montgomery, Alabama 36103-4128
(334) 215-8585

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by hand delivery, on this the 2nd day of November, 2007:

Jock Smith
Brian Strength
Cochran, Cherry, Givens & Smith
P.O. Box 830419
Tuskegee, Alabama 36083

Charles Nicholas Parnell, III
Parnell & Crum. P.A.
P.O. Box 2189
Montgomery, Alabama 36102

Algert Swanson Agricola, Jr.
Michael Andrew Donaldson
Slaten & O'Connor, P.C.
P.O. Box 1101
Montgomery, Alabama 36101

Emily Coody Marks
Ball, Ball, Matthews & Novak
P.O. Box 2148
Montgomery, Alabama 36102

Amy Hayes Naylor
P.O. Box 470
Clanton, Alabama 35046

OF COUNSEL

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | | |
|---|---|---|
| CARLOS ORTEGA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 2:07-CV-368 |
| | * | |
| STEPHEN BROCK, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT IN INTERVENTION FOR PARTICIPATION IN DISCOVERY AND FOR DETERMINATION OF COVERAGE ISSUES

COMES NOW the Intervenor, Alfa Mutual Insurance Company (hereinafter "Alfa"), in the above styled case, and states as follows:

1.    The Intervenor, Alfa, is an insurance company that is incorporated in the State of Alabama, and qualified to do business in the State of Alabama with its principal place of business in Montgomery, Alabama.

2.    Carlos Ortega filed this lawsuit on or about April 30, 2007, in the United States District Court for the Middle District of Alabama, Northern Division, against Stephen Brock, Big Time "Wings" Sports Grill, Inc., Charles W. Goggins and a number of Fictitious Defendants. (Exhibit A). The Complaint alleges that on or about May 1, 2002, at approximately 1:00 a.m., the Plaintiff and Marci Patterson were at Big Time "Wings" Sports Bar and Grill (hereinafter called "Wings") in Clanton, Alabama. (Exhibit A). On this date, the Mr. Goggins, the owner of Wings, demanded that a patron, who was not Mr. Ortega, remove a police t-shirt that he was wearing.

1



EXHIBIT
1

(Exhibit A). Mr. Ortega became involved in the incident when he offered to take the T-shirt outside. (Exhibit A). Stephen Brock, who was a uniformed Sheriff's Deputy for the Chilton County Sheriff's Department as well as a bouncer for Wings, allegedly assaulted the Plaintiff by choking him, dragging him outside the bar and throwing him onto the concrete. Mr. Ortega allegedly suffered "injuries to his body; medical bills and other financial losses; embarrassment and humiliation; pain and suffering; and mental anguish and emotional distress." (Exhibit A). The Plaintiff alleged one Count of Fourth Amendment Excessive Force under 42 U.S.C. § 1983 against Stephen Brock, one Count of Fourth Amendment Violation for Unreasonable Seizure against Stephen Brock, one Count of Assault against all Defendants, and one Count of Battery against all Defendants. (Exhibit A).

3.    On June 12, 2007, the Plaintiff amended his Complaint. The Amended Complaint alleges that Stephen Brock was acting as "an agent and/or employee of Chilton County, Alabama." (Exhibit B). The Plaintiff alleged that Mr. Brock was also acting as a security guard for Mr. Goggins, as owner of Wings at the time of the incident. (Exhibit B). The Plaintiff further alleged that Charles Goggins, as owner of Wings, authorized or ratified the wrongful actions of Stephen Brock because he was present at the scene of the incident, heard Brock verbally confront the patron with the police shirt on, and allowed Brock to choke and push Ortega. (Exhibit B). The Plaintiff realleged the same four Counts as in the original Complaint. (Exhibit B). Defendant Charles Goggins filed an Answer on August 16, 2007, wherein he denied all allegations to the Complaint and Amended Complaint. (Exhibit C).

4.    To Alfa's knowledge, there have been no depositions taken by the parties and there has been little discovery done in this action.

2

5.    Subsequent to the Complaint filed by Carlos Ortega, Charles Goggins requested that

Alfa provide defense and indemnity pursuant a manufactured home insurance policy written by Alfa,

being policy number T0227577 that was issued on September 7, 2004 and expired on September 7,

2005. (Exhibit D). This policy provides manufactured home insurance coverage to Charles Goggins

for certain occurrences and personal injuries subject to the terms and conditions of the insurance

policy and up to the policy's limit of liability.  However, policy number T0227577 contains among

other terms, the following definitions, exclusionary provisions, and conditions:

## **MANUFACTURED HOME POLICY**

### SECTION I-

### DEFINITIONS

2.  **"business"** means a trade, profession or occupation, including hobbies which
    are engaged in for economic gain or loss. This includes farming.

### SECTION II –

### LIABILITY AND OTHER COVERAGES

EXCLUSIONS

1.    Coverage E and Coverage F do not apply to:

a.  **bodily injury** or **property damage**:
    (1)   which is either expected or intended by an **insured**;

3

    (2)   which is the result of willful or malicious acts of an **insured**;

  b.  **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**.  The exclusion does not apply:

    (1)   to activities which are incidental to non-**business** pursuits;

    (2)   with respect to Coverage E to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

    (3)   to the rental or holding for rental of a residence of **yours**:

        (a)   on an occasional basis for the exclusive use of the residence;

        (b)   in part, unless intended for use as a residence by more than two roomers or boarders; or

        (c)   in part, as an office, school, studio or private garage;

    (4)   when the dwelling on the **residence premises** is a two family dwelling and **you** occupy one part and rent or hold for rental the other part...

SECTION I and SECTION II – CONDITIONS

1.    **Policy Period**.  This policy applied only to loss under Section I or **bodily injury** or **property damage** under Section II, which occurs during the period this policy is in effect.

(Exhibit D).

6.    Charles Goggins tendered the lawsuit brought by Carlos Ortega to Alfa for defense and indemnity pursuant to his Manufactured Home liability insurance policy T0227577 written by Alfa.

7.    Alfa disputes that it is obligated to defend or indemnify Charles Goggins or any other Defendant in this lawsuit.  However, Alfa has agreed to provide and has been providing a defense for Charles Goggins under a reservation of rights.

4

8.    Alfa now seeks a declaratory judgment as to its obligation to defend or indemnify Charles

Goggins. Specifically, Alfa contends that insurance coverage does not exist under the insurance

policy for the following reasons:

a.    **EXPECTED OR INTENDED BODILY INJURY AND PROPERTY**

**DAMAGE ARE NOT COVERED:**    The Manufactured Home liability insurance

policy provides coverage to Charles Goggins when he becomes legally obligated to pay

for damages because of bodily injury or property damage caused by an "occurrence" as

defined by Manufactured Home policy T0227577.  Based on the allegations in the

Complaint, Carlos Ortega is claiming that Charles Goggins expected or intended for

injury to occur to him.  At least a portion of and perhaps all of the Complaint filed by

Carlos Ortega, seeks relief and/ or damages for bodily injury or property damage that was

expected or intended by Charles Goggins, which is excluded under the terms of

Manufactured Home policy T0227577.

b.    **WILLFUL AND MALICIOUS BODILY INJURY AND PROPERTY**

**DAMAGE ARE NOT COVERED:**    The Manufactured Home policy T0227577

provides coverage to Charles Goggins when he becomes legally obligated to pay for

damages because of bodily injury or property damage caused by an "occurrence" as

defined by Manufactured Home policy number T0227577.  Based on the allegations in

the Complaint, Charles Goggins willfully and maliciously allowed Stephen Brock to

choke and assault Carlos Ortega.  At least a portion of and perhaps all of the Complaint

filed by Carlos Ortega, seeks relief and/ or damages for bodily injury or property damage

5

that was willful and/or malicious by Charles Goggins, which is excluded under the terms of Manufactured Home policy T0227577.

c.      **THE BUSINESS EXCLUSION:**     The Manufactured Home policy number T0227577 provides coverage to Charles Goggins when he becomes legally obligated to pay for damages because of bodily injury or property damage caused by an "occurrence" as defined by policy number T0227577.  Based on the allegations in the Complaint, Carlos Ortega is claiming that his injuries occurred while Stephen Brock was working for Charles Goggins, as owner of "Wings". At least a portion of and perhaps all of the complaint filed by Carlos Ortega seeks relief for bodily injury or property damage that arose out of a business pursuit and is therefore excluded because of the business exclusion under the terms of the Manufactured Home policy number T0227577.

d.      Alfa Mutual Insurance Company contends that there may be other reasons why coverage does not exist and seeks a declaration concerning all aspects or terms of the insurance coverage involved in this case.

9.      Alfa contends that there is no insurance coverage in the above styled action for Charles Goggins under Manufactured Home insurance policy for the reasons stated, and seeks a declaration accordingly.  Alfa states that this is justiciable controversy within the jurisdiction of this Court, such that the declaration of obligations and responsibilities, if any, of insurance coverage is appropriate.

6

**WHEREFORE**, Alfa prays that this Court will allow it to intervene in the above-styled case in order for it to participate in discovery, and that this Court will make specific rulings and finding as to whether Alfa owes any obligations or responsibilities to defend or indemnify Charles Goggins or any other Defendant in this lawsuit.


_____
S. MARK DUKES (ASB-9697-U77S)
MEGAN K. MCCARTHY (ASB-7279-M71K)
Counsel for Alfa Mutual Insurance Company


OF COUNSEL:
Nix Holtsford Gilliland
        Higgins & Hitson, P.C.
Post Office Box 4128
Montgomery, Alabama 36103-4128
(334) 215-8585


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by hand delivery, on this the _____ day of November, 2007:

Jock Smith
Brian Strength
Cochran, Cherry, Givens & Smith
P.O. Box 830419
Tuskegee, Alabama 36083

Charles Nicholas Parnell, III
Parnell & Crum. P.A.
P.O. Box 2189
Montgomery, Alabama 36102

Algert Swanson Agricola, Jr.

Michael Andrew Donaldson
Slaten & O'Connor, P.C.
P.O. Box 1101
Montgomery, Alabama 36101

Emily Coody Marks
Ball, Ball, Matthews & Novak
P.O. Box 2148
Montgomery, Alabama 36102

Amy Hayes Naylor
P.O. Box 470
Clanton, Alabama 35046


_____
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
ALABAMA, NORTHERN DIVISION    RECEIVED

| | | |
|---|---|---|
| Carlos A. Ortega, Jr., | ) | 2007 APR 30 P 4:30 |
| | ) | |
| Plaintiff, | ) | DEBRA P. HACKETT, CLK |
| | ) | U.S. DISTRICT COURT |
| vs. | ) | MIDDLE DIST ALA |
| | ) | Case No. 2:07-CV-368 MHT-ALA |
| Stephen Brock; Big Time "Wings" | ) | |
| Sports Grill, Inc.; Charles W. Goggins | ) | |
| and Fictitious Defendants | ) | |
| "A," "B," and "C," officers, persons, | ) | |
| corporations, firms or other entities | ) | |
| whose wrongful conduct caused the | ) | ORIGINAL |
| injuries and damages to the Plaintiff, | ) | |
| all of whose true and correct names | ) | |
| are unknown to the Plaintiff at this | ) | |
| time, but will be added by amendment | ) | DEMAND FOR JURY TRIAL |
| when ascertained. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, by and through his undersigned counsel of record hereby complains as follows:

### JURISDICTION

1.     This Honorable Court has jurisdiction of this cause of action pursuant 42 U.S.C.

§1983 and §1988, 28 U.S.C. §1331 and §1343(a)(3) and (4), and the Fourth and Fourteenth

Amendment to the United States Constitution. Plaintiff requests that this Honorable Court accept

pendent jurisdiction of any and all claims arising out of state law.

### PARTIES

2.     Carlos A. Ortega, Jr. is over the age of 19 years and is a resident of Autauga County,

Alabama. He will hereinafter be referred to as "Plaintiff."



EXHIBIT

A

3.    County Deputy Stephen Brock is an officer of the Chilton County Sheriff's Department and is named as a Defendant in both his official and individual capacity.

4.    Big Time "Wings" Sports Grill, Inc. is an Alabama corporation doing business in Chilton County, Alabama. Charles Goggins is the owner of Big Time "Wings" Sports Grill, Inc. At all times, Brock was acting as an agent of the Chilton County Sheriff, Big Time "Wings" Sports Grill, Inc., and Goggins and was acting as an agent and/or employee of Bigtime Wingz Sports Bar and/or Goggins and was acting within the course and scope of said agency and/or employment.

5.    Fictitious Defendants "A," "B," and "C" whether singular or plural, are those other officers, persons, firms, corporations, or other entities whose wrongful conduct caused or contributed to the cause of the injuries and damages to the Plaintiff, all of whose true and correct names are unknown to the Plaintiff at this time, but will be substituted by amendment when ascertained

### FACTS

6.    On May 1, 2002 at approximately 1:00 a.m. Plaintiff and Marci Patterson were at the Bigtime Wingz Bar and Grill in Clanton, Alabama. The two were speaking with two other patrons, one of whom was wearing a police T-shirt. The owner of Bigtime Wingz demanded that the patron remove it. Plaintiff offered to take the T-shirt outside. Suddenly and without warning, Brock began to assault Plaintiff by choking him and dragging him outside the bar. Plaintiff was then thrown on the concrete.

7.    At all relevant times Brock was duly appointed and acting as a Sheriff's Deputy for the Chilton County Sheriff's Department. As such, Deputy Brock was duly appointed to enforce the laws of Alabama and was so acting under color of law of the State of Alabama.

8.    At all times mentioned herein, Deputy Brock was an agent and/or employee of Chilton County, Alabama and was acting within the course and scope of said agency and/or

employment.

9. Based on the totality of the circumstances at the time of the incident, Brock unlawfully arrested Plaintiff and used excessive force on the Plaintiff.

10. · As a direct and proximate consequence of Brock's actions, Plaintiff was injured as follows:

       a.    Suffered injuries to his body;

       b.    Medical bills and other financial losses;

       c.    Embarrassment and humiliation;

       d.    Pain and suffering; and

       e.    Mental anguish and emotional distress.

## COUNT ONE
### 42 U.S.C. §1983
### FOURTH AMENDMENT EXCESSIVE FORCE CLAIM
### AGAINST BROCK

11. Plaintiff adopts and incorporates by reference the allegations in the aforementioned paragraphs as if fully set forth herein.

12. Brock, acting in his official capacity and under color of state law and with intent wrongfully injured Plaintiff and in doing so violated the Fourth Amendment to the Constitution of the United States.

13. The actions of Brock, in using excessive force, were objectively and subjectively unreasonable and constituted a violation of the clearly established laws on the use of excessive force. Furthermore, Brock lacked a reasonably basis for assuming that Plaintiff had committed a crime warranting the use of force.

14. As a direct and proximate consequence of Brock's actions, Plaintiff was injured as

stated above.

WHEREFORE, Plaintiff seeks all compensatory damages and punitive damages against the Defendants, jointly and severally, and all fictitious party Defendants in an amount to be determined by the jury above the jurisdictional amount, plus costs and other relief to which plaintiff is entitled by law.

## COUNT TWO
## FOURTH AMENDMENT VIOLATION FOR UNREASONABLE SEIZURE AGAINST BROCK

15.    The Plaintiff re-alleges and incorporates the allegations in the aforementioned paragraphs as if fully set forth herein.

16.    The foregoing facts as alleged violated the Plaintiff's right under the Fourth Amendment to be secure in his person from unreasonably seizures.

17.    As a direct and proximate consequence of such violation, Plaintiff was injured as stated above.

WHEREFORE, Plaintiff seeks all compensatory damages and punitive damages against the Defendants, jointly and severally, and all fictitious party Defendants in an amount to be determined by the jury above the jurisdictional amount, plus costs and other relief to which plaintiff is entitled by law.

## COUNT THREE
## ASSAULT

18.    Plaintiff re-alleges and incorporates the allegations in the aforementioned paragraphs as if fully set forth herein.

19.    Brock committed the tort of assault upon the Plaintiff through his intentional

attempts to do harm to the Plaintiffs.

20.    As a direct and proximate consequence of said assault Plaintiff was injured as described above.

WHEREFORE, Plaintiff seeks all compensatory damages and punitive damages against the Defendants, jointly and severally, and all fictitious party Defendants in an amount to be determined by the jury above the jurisdictional amount, plus costs and other relief to which plaintiff is entitled by law.

## COUNT EIGHT

## BATTERY

21.    Plaintiff re-alleges and incorporates the allegations in the aforementioned paragraphs as if fully set forth herein.

22.    Brock made intentional, unlawful, and harmful physical contact with Plaintiff.

23.    Brock intended the actions that led to the physical contact with the Plaintiff.

WHEREFORE, Plaintiff seeks all compensatory damages and punitive damages against the Defendants, jointly and severally, and all fictitious party Defendants in an amount to be determined by the jury above the jurisdictional amount, plus costs and other relief to which plaintiff is entitled by law.

## JURY TRIAL DEMAND

The plaintiff demands a trial by jury as to all claims and issues for which a jury trial is available.

Dated this 30th day of April, 2007.

Respectfully submitted,

JOCK SMITH
BRIAN STRENGTH

OF COUNSEL:
COCHRAN, CHERRY, GIVENS & SMITH
P.O. Box 830419
Tuskegee, Al 36083
(334) 727-0060
Fax (334) 727-7197

## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

Carlos A. Ortega, Jr.,      )
                            )
      Plaintiff,      )
                            )
vs.                       )     Case No. 2:07 CV-368-MHT
                            )
Stephen Brock; Big Time "Wings"  )
Sports Grill, Inc.; Charles W. Goggins  )
                            )
      Defendants.     )

---

### AMENDED COMPLAINT

Plaintiff, by and through his undersigned counsel of record hereby complains as follows:

### JURISDICTION

1.    This Honorable Court has jurisdiction of this cause of action pursuant 42 U.S.C. §1983 and §1988, 28 U.S.C. §1331 and §1343(a)(3) and (4), and the Fourth and Fourteenth Amendment to the United States Constitution. Plaintiff requests that this Honorable Court accept pendent jurisdiction of any and all claims arising out of state law.

### PARTIES

2.    Carlos A. Ortega, Jr. is over the age of 19 years and is a resident of Autauga County, Alabama. He will hereinafter be referred to as "Plaintiff."

3.    County Deputy Stephen Brock is an officer of the Chilton County Sheriff's Department and is named as a Defendant in both his official and individual capacity.

4.    Big Time "Wings" Sports Grill, Inc. is an Alabama corporation doing business in Chilton County, Alabama. Charles Goggins is the owner of Big Time "Wings" Sports Grill, Inc. At all times, Brock was acting as an agent of the Chilton County Sheriff, Big Time "Wings" Sports


EXHIBIT
B

Grill, Inc., and Goggins and was acting as an agent and/or employee of Bigtime Wings Sports Bar and/or Goggins and was acting within the course and scope of said agency and/or employment.

## FACTS

5.     On May 1, 2002 at approximately 1:00 a.m. Plaintiff and Marci Patterson were at the Bigtime Wings Bar and Grill in Clanton, Alabama.  The two were speaking with two other patrons, one of whom was wearing a police T-shirt.  The owner of Bigtime Wings demanded that the patron remove it.  Brock, who was in uniform, also demanded that the patron take off the T-shirt and further added that the patron was committing the crime of impersonating a police officer.  Brock threatened to arrest the patron.  Plaintiff offered to take the T-shirt outside for the patron.   Suddenly and without warning, Brock began to assault Plaintiff by choking him and dragging him outside the bar. Plaintiff was then thrown on the concrete.

6.     At all relevant times Brock was duly appointed and acting as a Sheriff's Deputy for the Chilton County Sheriff's Department.  As such, Deputy Brock was duly appointed to enforce the laws of Alabama and was so acting under color of law of the State of Alabama.

7.     At all times mentioned herein, Deputy Brock was an agent and/or employee of Chilton County, Alabama and was acting within the course and scope of said agency and/or employment.  In addition, Goggins and Bigtime Wings are liable for the state court causes of action against Brock under theories of respondeat superior.  Plaintiff alleges that Goggins authorized or ratified that wrongful actions of Brock.  Goggins was present at the scene.  Goggins heard Brock verbally confront the patron with the police T-shirt.  He allowed Brock to handle the situation by forcing the patron to remove the shirt and by threatening to remove the patron from the bar.  In essence, Goggins allowed Brock to act as a bouncer for the bar, in the presence of Goggins, and did

nothing to stop Brock or dispel the reasonable belief, created by Goggins, in the mind of the Plaintiff that Brock was acting as an agent of Goggins and the bar.

8.      Based on the totality of the circumstances at the time of the incident, Brock unlawfully arrested Plaintiff and used excessive force on the Plaintiff.

9.      As a direct and proximate consequence of Brock's actions, Plaintiff was injured as follows:

        a.      Suffered injuries to his body;

        b.      Medical bills and other financial losses;

        c.      Embarrassment and humiliation;

        d.      Pain and suffering; and

        e.      Mental anguish and emotional distress.

**COUNT ONE**
**42 U.S.C. §1983**
**FOURTH AMENDMENT EXCESSIVE FORCE CLAIM**
**AGAINST BROCK**

10.     Plaintiff adopts and incorporates by reference the allegations in the aforementioned paragraphs as if fully set forth herein.

11.     Brock, acting in his official capacity and under color of state law and with intent wrongfully injured Plaintiff and in doing so violated the Fourth Amendment to the Constitution of the United States.

12.     The actions of Brock, in using excessive force, were objectively and subjectively unreasonable and constituted a violation of the clearly established laws on the use of excessive force. Furthermore, Brock lacked a reasonable basis for assuming that Plaintiff had committed a crime warranting the use of force.

13.    As a direct and proximate consequence of Brock's actions, Plaintiff was injured as stated above.

WHEREFORE, Plaintiff seeks compensatory damages and punitive damages against Brock in an amount to be determined by the jury above the jurisdictional amount, plus costs and other relief to which Plaintiff is entitled by law.

## COUNT TWO
## FOURTH AMENDMENT VIOLATION FOR UNREASONABLE SEIZURE AGAINST BROCK

14.    The Plaintiff re-alleges and incorporates the allegations in the aforementioned paragraphs as if fully set forth herein.

15.    The foregoing facts as alleged violated the Plaintiff's right under the Fourth Amendment to be secure in his person from unreasonably seizures.

16.    As a direct and proximate consequence of such violation, Plaintiff was injured as stated above.

WHEREFORE, Plaintiff seeks compensatory damages and punitive damages against Brock in an amount to be determined by the jury above the jurisdictional amount, plus costs and other relief to which plaintiff is entitled by law.

## COUNT THREE
## ASSAULT

17.    Plaintiff re-alleges and incorporates the allegations in the aforementioned paragraphs as if fully set forth herein.

18.    Brock committed the tort of assault upon the Plaintiff through his intentional attempts to do harm to the Plaintiffs.

19.    As a direct and proximate consequence of said assault Plaintiff was injured as described above.

WHEREFORE, Plaintiff seeks compensatory damages and punitive damages against the Defendants, jointly and severally, in an amount to be determined by the jury above the jurisdictional amount, plus costs and other relief to which plaintiff is entitled by law.

**COUNT EIGHT**

**BATTERY**

20.    Plaintiff re-alleges and incorporates the allegations in the aforementioned paragraphs as if fully set forth herein.

21.    Brock made intentional, unlawful, and harmful physical contact with Plaintiff.

22.    Brock intended the actions that led to the physical contact with the Plaintiff.

WHEREFORE, Plaintiff seeks compensatory damages and punitive damages against the Defendants, jointly and severally, in an amount to be determined by the jury above the jurisdictional amount, plus costs and other relief to which plaintiff is entitled by law.

JURY TRIAL DEMAND

The plaintiff demands a trial by jury as to all claims and issues for which a jury trial is available.

Dated this 12th day of June, 2007.

Respectfully submitted,


 /s/ Brian Strength
JOCK SMITH
BRIAN STRENGTH


OF COUNSEL:
COCHRAN, CHERRY, GIVENS & SMITH
P.O. Box 830419
Tuskegee, Al 36083
(334) 727-0060
Fax (334) 727-7197


### CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the foregoing upon counsel listed below by electronic notification, on this the 12th day of June, 2007.

    Amy Hayes Naylor
    P.O. Box 470
    Clanton, AL 35046

    Charles N. Parnell, III
    Parnell & Crum, P.A.
    P.O. Box 2189
    Montgomery, AL 36102-2189

    Algert Swanson Agricola, Jr.
    Slaten & O'Connor, P.C.
    P.O. Box 1110
    Montgomery, Alabama 36101

    Emily C. Marks
    BALL, BALL, MATTHEWS & NOVAK, P.A.
    2000 Interstate Park Drive
    Suite 204
    Montgomery, AL 36109


                    /s/ Brian P. Strength
                    OF COUNSEL

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CARLOS ORTEGA,                      )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        2:07cv368-MHT
                                    )
STEPHEN BROCK, BIG TIME             )
"WINGS" SPORTS GRILL, INC.,         )
CHARLES W. GOGGINS, et al.,         )
                                    )
        Defendants.                 )

## ANSWER

**COMES NOW**, Defendant, Charles W. Goggins, by and through his attorneys, and for answer to the Plaintiff's Complaint filed herein, states the following:

1.    Defendant denies the material allegations contained in the Plaintiff's Amended Complaint and demands strict proof thereof.

2.    Based upon information and belief, Defendant admits the assertion of residence contained in paragraph 2 of the Plaintiff's Amended Complaint.

3.    Based upon information and belief, Defendant admits the allegations contained in paragraph 3 of the Plaintiff's Amended Complaint.

4.    Defendant denies the allegations of paragraph 4 of the Plaintiff's Amended Complaint and demands strict proof thereof.

## FACTS

5.    Defendant denies the material allegations contained in paragraph 5 of the Plaintiff's Amended Complaint and demands strict proof thereof.

6.    Defendant denies the material allegations contained in paragraph 6 of the Plaintiff's Amended Complaint and demands strict proof thereof.



7.     Defendant denies the material allegations contained in paragraph 7 of the Plaintiff's Amended Complaint and demands strict proof thereof.

8.     Defendant denies the material allegations contained in paragraph 8 of the Plaintiff's Amended Complaint and demands strict proof thereof.

9.     Defendant denies the material allegations contained in paragraph 9 of the Plaintiff's Amended Complaint and demands strict proof thereof.

10.     Defendant denies the adopted and incorporated references referred to in paragraph 10 of the Plaintiff's Amended Complaint and demands strict proof thereof.

11.     Defendant denies the material allegations contained in paragraph 11 of the Plaintiff's Amended Complaint and demands strict proof thereof.

12.     Defendant denies the material allegations contained in paragraph 12 of the Plaintiff's Amended Complaint and demands strict proof thereof.

13.     Defendant denies the material allegations contained in paragraph 13 of the Plaintiff's Amended Complaint and demands strict proof thereof.

14.     Defendant denies the adopted and incorporated references referred to in paragraph 14 of the Plaintiff's Amended Complaint and demands strict proof thereof.

15.     Defendant denies the material allegations contained in paragraph 15 of the Plaintiff's Amended Complaint and demands strict proof thereof.

16.     Defendant denies the material allegations contained in paragraph 16 of the Plaintiff's Amended Complaint and demands strict proof thereof.

17.     Defendant denies the adopted and incorporated references referred to in paragraph 17 of the Plaintiff's Amended Complaint and demands strict proof thereof.

18.    Defendant denies the material allegations contained in paragraph 18 of the Plaintiff's Amended Complaint and demands strict proof thereof.

19.    Defendant denies the material allegations contained in paragraph 19 of the Plaintiff's Amended Complaint and demands strict proof thereof.

20.    Defendant denies the adopted and incorporated references referred to in paragraph 20 of the Plaintiff's Amended Complaint and demands strict proof thereof.

21.    Defendant denies the material allegations contained in paragraph 21 of the Plaintiff's Amended Complaint and demands strict proof thereof.

22.    Defendant denies the material allegations contained in paragraph 22 of the Plaintiff's Amended Complaint and demands strict proof thereof.

## FIRST AFFIRMATIVE DEFENSE

Defendant asserts the Plaintiff's own actions resulted in the injuries and/or damages referred to in his Amended Complaint.

## SECOND AFFIRMATIVE DEFENSE

Defendant pleads assumption of the risk.

## THIRD AFFIRMATIVE DEFENSE

Defendant denies Stephen Brock was his employee or agent.

## FOURTH AFFIRMATIVE DEFENSE

The Complaint fails to state a cause of action against this defendant upon which relief may be granted to the plaintiff.

## FIFTH AFFIRMATIVE DEFENSE

The Defendant pleads the general issue.

3

## SIXTH AFFIRMATIVE DEFENSE

The defendant pleads not guilty.

## SEVENTH AFFIRMATIVE DEFENSE

The defendant avers that it is not guilty of any violation of the plaintiff's employment rights.

## EIGHTH AFFIRMATIVE DEFENSE

The defendant pleads the statute of limitations.

## NINTH AFFIRMATIVE DEFENSE

The plaintiff has failed to exhaust her administrative remedies.

## TENTH AFFIRMATIVE DEFENSE

The plaintiff's claim for relief is barred for a failure to mitigate her damages, if any.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendant pleads an intervening and independent act which proximately caused the alleged injuries referred to in the Plaintiff's complaint.

## TWELFTH AFFIRMATIVE DEFENSE

Defendant denies that any violation of Title 42 U.S.C. §1983 has occurred and demands strict proof thereof.

## THIRTEENTH AFFIRMATIVE DEFENSE

The plaintiff is not entitled to punitive damages in this action and any order of punitive damages against this defendant would amount to a violation of this defendant's constitutional rights.

4

## FOURTEENTH AFFIRMATIVE DEFENSE

The plaintiff's alleged injuries and damages resulted from his own conduct, and he contributed to any of the alleged damages or injuries received. He should be estopped from any cause of action in this matter.

## FIFTEENTH AFFIRMATIVE DEFENSE

Defendant denies any wrongful, tortious, or improper conduct.

## SIXTEENTH AFFIRMATIVE DEFENSE

The award of discretionary, compensatory damages for mental suffering on behalf of Plaintiff violates the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the Constitution of the United States because there are no fixed standards for the ascertainment of compensatory damages recoverable for mental suffering. The amount of damage for such a claim is left to the sound discretion of the jury with no specific, much less objective standard for the amount of the award. Therefore, the procedure pursuant to which compensatory damages for mental suffering are awarded violates the Constitution because: (a) it fails to provide a reasonable limit on the amount of the award against Defendants, which thereby violates the due process clause of the Fourteenth amendment of the Constitution of the United States, (b) it fails to provide specific standards for the amount of the award of compensation, which thereby violates the Fifth and Fourteenth Amendment of the United States Constitution.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The award of discretionary compensatory damages for mental suffering to the Plaintiff violates the due process clause of Article One, Section 6 of the Constitution of Alabama because it fails to provide a limit on the amount of the award against this Defendant, it is

unconstitutionally vague, it fails to provide specific standards in the amount of the award of such damages, and it constitutes a deprivation of property without the due process of the law.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

1.      Defendant avers that the Complaint fails to state a claim upon which punitive damages may be awarded to Plaintiff.

2.      Defendant avers that any award of punitive damages to the Plaintiff in this case would be violative of the constitutional safeguards provided to Defendant under the Constitution of the State of Alabama.

3.      Defendant avers that any award of punitive damages to the Plaintiff in this case would be violative of the constitutional safeguards provided to Defendant under the Constitution of the United States of America.

4.      Defendant avers that any award of punitive damages to the Plaintiff in this case would be violative of the constitutional safeguards provided to the Defendant under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States in that the determination of punitive damages under Alabama law is vague, is not based upon any objective standards, is in fact standardless, and is not rationally related to legitimate government interests.

5.      Defendant avers that any award of punitive damages to the Plaintiff in this case would be violative of Article I, Section 6 of the Constitution of the State of Alabama which provides that no person shall be deprived of life, liberty, or property except by due process of law, in that punitive damages are vague and are not rationally related to legitimate government interests.

6.      Defendant avers that any award of punitive damages to the Plaintiff in this case would be violative of the procedural safeguards provided to defendant under the Sixth Amendment to the Constitution of the United States in that punitive damages are penal in nature and

6

consequently, Defendant is entitled to the same procedural safeguards accorded to criminal defendants.

      7.      It is violative of the self-incrimination clause of the Fifth Amendment to the Constitution of the United States of America to impose against this Defendant punitive damages, which are penal in nature, yet compel Defendant to disclose documents and evidence.

      8.      It is violative of the self-incrimination clause of Article I, Section 6 of the Constitution of the State of Alabama to impose against this Defendant punitive damages, which are penal in nature, yet compel Defendant to disclose documents and evidence.

      9.      Plaintiff's claim of punitive damages violates the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the Constitution of the United States, on the following grounds:

    a)      It is a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution to impose punitive damages, which are penal in nature, against a civil defendant upon the plaintiff's satisfying a burden of proof which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

    b)      The procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit or, the amount of the award against Defendant, which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

    c)      The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of the award of punitive damages which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

    d)      The procedures pursuant to which punitive damages are awarded result in the imposition of different penalties for the same or similar acts and, thus, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

    e)      The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the maximum criminal fine for the same or similar conduct, which thereby infringes

the Due Process Clause of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; and

f)    The procedures pursuant to which punitive damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrongdoing, which infringes the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution.

10.    Plaintiff's claim of punitive damages violates the Due Process Clause of Article I,

Section 6, of the Constitution of Alabama, on the following grounds:

a)    It is a violation of the Due Process Clause to impose punitive damages, which are penal in nature, upon a civil Defendant upon the plaintiff's satisfying a burden of proof less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

b)    The procedures pursuant to which punitive damages are awarded fail to provide a limit on the amount of the award against this Defendant;

c)    The procedures pursuant to which punitive damages are awarded are unconstitutionally vague;

d)    The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of the award of punitive damages;

e)    The award of punitive damages in this case would constitute a deprivation of property without due process of law; and

f)    The procedures pursuant to which punitive damages are awarded fail to provide a limit on the amount of the award against this Defendant.

11.    Plaintiff's attempt to impose punitive or extracontractual damages on this Defendant,

on the basis of vicarious liability for the conduct of others, violates the Fifth, Eighth and Fourteenth

Amendments of the United States Constitution.

12.    The award of punitive damages to the Plaintiff in this action would constitute a deprivation of property without due process of law required under the Fifth and Fourteenth Amendments of the United States Constitution.

13.    The award of punitive damages against Defendant in this action would violate the prohibition against laws that impair the obligations of contracts in violation of Article I, Section 22 of the Constitution of Alabama.

14.    The Complaint fails to state a claim for punitive damages under Alabama Code §§ 6-11-20 to 6-11-30 (1975) and is barred.

15.    It is violative of the self-incrimination clause of Article I, Section 6 of the Constitution of the State of Alabama to impose against this Defendant punitive damages, which are penal in nature, yet compels Defendant to disclose evidence.

WHEREFORE, the foregoing premises considered, Defendant Charles W. Goggins respectfully requests this Honorable Court grant his Motion to Dismiss.


/s/ E. Ham Wilson, Jr.
E. Ham Wilson, Jr., Esq.
Emily C. Marks, Esq.
Attorneys for Charles W. Goggins



OF COUNSEL:
Ball, Ball, Matthews & Novak, P.A.
Suite #204 [36109-5413]
P.O. Box 2148
Montgomery, Alabama  36102-2148
Telephone (334) 387-7680
Telefax (334) 387-3222



9

## CERTIFICATE OF SERVICE

I hereby certify that on this August 16, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Algert Swanson Agricola
Michael Andrew Donaldson
Slaten & O'Connor
105 Tallapoosa St., Ste. 101
Montgomery, AL 36104
Jraagricola@slatenlaw.com; kboothe@slatenlaw.com
adonaldson@slatenlaw.com; kboothe@slatenlaw.com

Amy Hayes Naylor
104 1st Avenue
P.O. Box 470
Clanton, AL 35046-0470
amyhayesnaylor@bellsouth.net

Charles Nichols Parnell
Parnell & Crum
P O Box 2189
Montgomery, AL  36102-2189
lllcnparnell@parnellcrum.com

Jock Michael Smith
Brian P. Strength, Esq.
Cochran, Cherry, Givens & Smith, P.C.
306 North Main Street
P.O. Box 830419
Tuskegee, AL 36083
bpinkard@cochranlawtuskegee.com
bstrength@cochranlawtuskegee.com

/s/ E. Ham Wilson, Jr.
OF COUNSEL



2108 EAST SOUTH BOULEVARD ■ POST OFFICE BOX 11000
MONTGOMERY, ALABAMA 36191-0001
WWW.ALFAINS.COM
334/288-3900

June 6, 2007

This is to certify that the attached is a true and correct copy of the manufactured home declaration and policy book, which was issued to Wade and Melanie Goggins for policy T227577. The declaration reflects coverage as it would have been on April 30, 2005 .

Rexton C. Seabrook, CPCU
Manager, Farm Underwriting

Encl.



EXHIBIT

D

ALFA MUTUAL INSURANCE COMPANY ■ ALFA MUTUAL FIRE INSURANCE COMPANY ■ ALFA MUTUAL GENERAL INSURANCE COMPANY
ALFA LIFE INSURANCE CORPORATION ■ ALFA INSURANCE CORPORATION
ALFA GENERAL INSURANCE CORPORATION ■ ALFA FINANCIAL CORPORATION ■ ALFA SPECIALTY INSURANCE CORPORATION

PRINTED
OPTICAL
IMAGE

**ALFA MUTUAL INSURANCE COMPANY**          Policy Number: T0227577
2108 EAST SOUTH BLVD.
P.O. BOX 11000                              **FILE COPY**
MONTGOMERY, ALABAMA 36191-0001

I
N N                                                          **NEW BUSINESS**
A S
M U      WADE & MELANIE GOGGINS
E R      PO BOX 2061
D E      CLANTON AL  35046                  MANUFACTURED HOME DECLARATIONS
  D
L        Policy Number  : T0227577
I C      Agent # / SC # :  464 /  422
E N L    Member Number  : 1601010
N H A    Accounting Date: 09/29/04
  O U    Agent's Name   : DAVID LOCKE
L S S    Service Center : 701 LOGAN RD
D E                       CLANTON AL  35045-9209
E R      Phone Number   : 205-755-6502
R

**POLICY PERIOD:**

The policy period begins and ends at 12:01 a.m. Standard Time at the residence premises.  Insurance
is provided by this policy for the policy period shown and for successive policy periods for which the
premium is paid and accepted.  If only a six month's renewal premium is paid then the policy period
shall be only six months.  If we elect to continue this insurance, we will renew this policy for each
successive policy period, subject to payment of the renewal premium, policy rules and policy forms then
in effect. The policy will expire at the end of the then current policy period if the renewal premium
is not paid prior to that time.

The effective date of your policy is  09/07/04, 12:01 AM Standard Time.
The expiration date of your policy is  09/07/05, 12:01 AM Standard Time.


The residence premises covered by this policy is located:
     COUNTY ROAD 432 CLANTON AL

---

COVERAGES:      AMI AL                                        CLASS: 3101011
    SECTION I  (Property)        LIMITS      SECTION II  (Liability)        LIMITS

    A. Dwelling              $  35,000      E. Personal Liability
    B. Other Structures      $   3,500         (Each Occurrence)        $ 100,000
    C. Personal Property     $  24,500      F. Medical Payments
    D. Loss of Use           $   7,000         (Each Person)            $   1,000
                                                (Each Accident)          $  25,000

    Please refer to your policy for additional coverages that are provided, and the conditions
    under which coverage limits apply.

    A deductible (that portion of the loss you pay) of  $ 500  applies to property losses
    (Section I).  No deductibles apply to liability losses (Section II).

    Your dwelling is located in ZONE 01, RATING CLASS 01, BUILT IN 2004, LENGTH 80FT, WIDTH 16FT,
    MANUFACTURED BY : SOUTHERN ENERGY
    SERIAL NUMBER   : NTA1356466

---

**LIENHOLDERS**

---

**PREMIUMS:**

    Basic Policy Premium                       $   437       437
    Personal Property Premium                  $     0
    Increased Liability/Medical Premium        $     0
    Section I Endorsement Premiums             $    74        74
    Section II Endorsement Premiums            $     0
                                                _____
    TOTAL POLICY PREMIUM                       $   511       511

$ -    511.00  9 -
**THIS DECLARATION INDICATES COVERAGE AND/OR PREMIUM CHANGES, IT IS NOT A BILL.**
Continued on Reverse Side

PRINTED
OPTICAL
IMAGE

| ENDORSEMENTS: (Forming a part of your policy) | | PREMIUM |
|---|---|---|
| MH-1 | DWELLING REPLACEMENT COST | $    15 |
| MH-45 | REPLACEMENT COST ON PERSONAL PROPERTY | $    59 |

## CREDITS:

### DISCOUNT INFORMATION

**LIENHOLDER'S INTEREST:** The word "lienholder" includes trustee:

a. **BENEFIT CLAUSE.** If this policy is cancelled or not renewed, WE mail written notice of that fact to any lienholder or additional interest shown on the DECLARATIONS page. WE provide coverage under this policy for their benefit only for 10 days after notice is mailed. Proof of mailing must be resolved by reference to OUR usual mailing procedures, and is legally sufficient proof of notice.

b. **LIENHOLDER CLAUSE.** The term "lienholder" means any person, firm, association, corporation or other legal entity named as the lienholder on the DECLARATIONS page. The designation of a lienholder on the DECLARATIONS page is considered to be an acknowledgment by YOU that the entity named has a legal interest in the manufactured home or other personal property due to an installment sales contract or other security agreement.

If a lienholder is shown on the DECLARATIONS page, WE pay any loss to the lienholder and the insured, as interests appear. If more than one lienholder is shown, the order of OUR payment to each lienholder is the same as the order of precedence of the liens.

If WE deny the insured's claim, that denial does not apply to a valid claim of the lienholder, if the lienholder:

(1) notifies US of any change in ownership, occupancy of substantial change in risk of which the lienholder is aware;

(2) pays any premium due under this policy on demand by US; and

(3) submits a signed, sworn proof of loss within 60 days after receiving notice from US of the INSURED'S failure to do so. Section I Policy provisions relating to Appraisal, Suit Against US and Loss Payment apply to the lienholder.

If WE pay the lienholder for any loss and deny payment to the INSURED:

(a) WE are subrogated to all the rights of the lienholder granted under the security agreement on the property; or

(b) at OUR option, WE may pay to the lienholder the whole principal on the lien plus any accrued interest. In this event, WE are entitled to receive a full assignment and transfer of the lien and all securities held as collateral to the debt.

Subrogation shall not impair the right of the lienholder to recover the full amount of the lienholder's claim.

**NOTICE UNDER FAIR CREDIT REPORTING ACT**

Public law 91-508 requires that we advise you that a routine inquiry may be made which will provide applicable information concerning credit history, character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.

COUNTERSIGNED DATE:   09/29/04

AUTHORIZED
COUNTERSIGNATURE

00013

MH/AL300/08 01 96 ALABAMA MANUFACTURED HOME

MH-1 (Ed. 3/98)

## SECTION I—REPLACEMENT COST LOSS SETTLEMENT

The provisions of this endorsement apply to your policy if the designation MH-1 is shown in the endorsement section of your **declarations**.

In consideration of an additional premium it is agreed that **Condition—Loss Settlement**, of **Section I—Conditions** is deleted and replaced by the following:

**Loss Settlement.** Covered Property losses are settled as follows:

a. (1) Other Structures;

(2) Personal Property; and

(3) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings.

at **actual cash value** at the time of loss.

b. **The Manufactured Home** (not including any item or structure addressed under "a." above) covered under **Coverage A** at replacement cost without deduction for depreciation, not to exceed the smallest of the following amounts:

(1) the limit of liability under this policy applying to the **Manufactured Home**;

(2) the replacement cost, of that part of the **Manufactured Home** damaged, for like construction and use on the **residence premises**; or

(3) the amount actually and necessarily spent to repair or replace the damaged **Manufactured Home**.

We will pay no more than the **actual cash value** of the damage unless:

(a) actual repair or replacement is complete; or

(b) the cost to repair or replace the damage is both:

(i.) more than 5% of the limit of liability under this policy for the **Manufactured Home**; and

(ii) more than 1,000.

**You** may disregard the replacement cost loss settlement provision and file a statement of loss under this policy for loss or damage to the **Manufactured Home** on an **actual cash value** basis. **You** may then file a statement of loss within 180 days of the loss for any additional liability on a replacement cost basis.

All other provisions of **your** policy apply.

_H. Al Kent_
Secretary

_Jerry A. Newby_
President

**ALFA INSURANCE CORPORATION**
**ALFA MUTUAL INSURANCE COMPANY**

Includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, 1984.

***THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.***

**HO-45/FO-45/MH-45 (5/94)**

### REPLACEMENT COST ON PERSONAL PROPERTY ENDORSEMENT

For additional premium:

A.    Loss to the following property shall be settled at replacement cost without deduction for depreciation:

1.    Property covered under Coverage C - Personal Property (Homeowner and Manufactured Home Policies) or Coverage B - Personal Property Coverage (Farmowner Policy);

2.    Carpeting, domestic appliances and awnings.

B.    This endorsement does not apply to:

1.    Outdoor antennas, satellite dishes and related equipment.

2.    Photographs or negatives, antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

3.    Articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items;

4.    Property not maintained in good or workable condition;

5.    Property which at the time of loss, is either obsolete or useless to you.

C.    Our limit of liability for loss under this endorsement shall not exceed the smallest of the following amounts:

1.    Replacement cost at time of loss;

2.    The full cost of repair;

3.    400% of the actual cash value at the time of loss; or

4.    Any special limit of liability described in the policy.

D.    You may elect not to replace some or all of the destroyed or stolen property. Settlement for the property not replaced will be on an actual cash value basis. If you later decide to replace any destroyed or stolen property, you may make an additional claim under this endorsement within 180 days after the loss.

E.    This endorsement does not increase the Coverage A or the Coverage B (Farmowner) or Coverage C (Homeowner and Manufactured Home) limit of liability.

F.    We will not be liable under this endorsement unless and until actual repair or replacement is completed.

G.    Definition: "replacement cost" means the cost, at the time of loss, of a new article identical to the one destroyed or stolen. When the identical article is no longer manufactured or is not available, replacement cost shall mean the cost of a new article similar to that destroyed or stolen and which is of comparable quality and usefulness.

_H. al Ocaño_
Secretary

_Jerry a. Newley_
President

# Manufactured Home Policy



ALFA MUTUAL INSURANCE COMPANY
MONTGOMERY, AL

ALMH-1 (5/95)

**ALFA MUTUAL INSURANCE COMPANY**

(A Mutual Insurance Company,

herein called this Company)

This booklet–combined with **your Declarations**, Forms and Endorsements–constitutes **your** Policy. The coverages described are applicable only when properly identified in the **Declarations**.

Notify **your** agent or the Company when the following conditions occur:

1.  **Your** property is mortgaged or is subjected to any other lien.
2.  **You** move.
3.  Title to **your** property is changed or transferred.
4.  Property becomes **vacant** or **unoccupied**.
5.  **You** have a loss or accident.

**IMPORTANT**

The described manufactured home is covered only while at the location shown on the **Declarations**. Be sure to notify this Company before **you** move **your** home.

AGREEMENT                                                        2
DEFINITIONS                                                      2
SECTION I—PHYSICAL DAMAGES
    COVERAGES                                                    4
Coverage A—Manufactured Home                                     4
Coverage B—Other Structures                                      5
Coverage C—Personal Property                                     6
    Special Limits of Liability Under Coverage C                 6
    Property Not Covered Under Coverage C                        7
Coverage D—Loss of Use                                           8
    1. Additional Living Expense                                 8
    2. Fair Rental Value                                         8
    3. Prohibited Use                                            9
Additional Coverages                                             9
    1. Fire Department Service Charge                            9
    2. Emergency Removal                                         9
    3. Property Removed                                          9
    4. Debris Removal                                            9
    5. Trees, Shrubs and Other Plants                           10
    6. Reasonable Repairs                                       10
    7. Power Interruption                                       10
    8. Refrigerated Products                                    10
    9. Credit Card Forgery and Counterfeit
       Money                                                    11
    10. Arson Award                                             11
SECTION I—PERILS INSURED AGAINST                                12
Coverage A—Manufactured Home                                    12
Coverage B—Other Structures                                     12
Coverage C—Personal Property                                    12
SECTION I—EXCLUSIONS                                            15
SECTION I—CONDITIONS                                            19
SECTION II—LIABILITY AND OTHER
    COVERAGES                                                   24
Coverage E—Personal Liability                                   24
Coverage F—Medical Payments to Others                           24
SECTION II—ADDITIONAL COVERAGES                                 25
    1. Claim Expenses                                           25
    2. First Aid Expenses                                       25
    3. Damage to Property of Others                             25
SECTION II—EXCLUSIONS                                           26
SECTION II—CONDITIONS                                           30
SECTION I AND II—CONDITIONS                                     32
MUTUAL CONDITIONS                                               35

ALMH-1 (5/95)

(1)

AGREEMENT AND DEFINITIONS

## AGREEMENT

**We** will provide the insurance described in this policy in return for the required premium and compliance with al the applicable policy provisions.

## DEFINITIONS

"**You**" and "**your**" mean the "named insured" shown in the **Declarations**. **Your** spouse is included if a resident of **your** household. "**We**", "**us**" and "**our**" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "**bodily injury**" means bodily harm, sickness or disease. This includes required care, loss of services and resulting death. Bodily injury does not include: emotional distress, mental anguish, humiliation, mental distress, mental injury or any similar injury unless it arises out of actual physical injury.

2. "**business**" means a trade, profession or occupation, including hobbies which are engaged in for economic gain or loss. This includes farming.

3. "**Declarations**" means the policy **Declarations**, any amended **Declarations**, or any endorsement changing either of these.

4. "**insured**" means **you** and if residents of **your** household:

   a. **your** relatives;

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "**insured**" also includes:

   c. Any person or organization legally responsible for an animal or watercraft to which this policy applies, provided it is owned by **you** or a person included in 4.a. or 4.b.

   A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner is not an **insured**;

   d. Any person engaged in **your** employment or the employment of a person included in 4.a. or 4.b. with respect to any vehicle to which this policy applies.

(2)

5. "**insured location**" means:

a. the **residence premises**;

b. the part of any other premises, other structures, and grounds, used by **you** as a residence and which is shown in the **Declarations**. This includes premises, structures and grounds **you** acquire while this policy is in effect for **your** use as a residence;

c. any premises used by **you** in connection with the premises included in 5.a. or 5.b.;

d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

e. **vacant** land owned by or rented to an **insured**. This does not include farmland;

f. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

g. individual or family cemetery plots or burial vaults of an **insured**;

h. any part of a premises occasionally rented to an **insured** for other than **business** purposes;

6. "**motor vehicle**" means:

a. a motorized land vehicle designed for travel on public roads or subject to **motor vehicle** registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

b. a trailer or semi-trailer designed for travel on public roads and subject to **motor vehicle** registration. A boat, camper, home or utility trailer not being towed by or carried on a vehicle included in 6.a. is not a **motor vehicle**;

c. a motorized golf cart, snowmobile, or other motorized land vehicle owned by, operated by, rented to or loaned to an **insured** and designed for recreational use off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**;

d. a motorized bicycle, tricycle or similar type of equipment owned by, operated by, rented to or loaned to an **insured** while off an **insured location**;

e. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b., 6.c., or 6.d.

(3)

7. **"pollutants"** means any solid, liquid, gaseous or thermal acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

8. **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by an **insured** is not considered to be **property damage**.

9. **"residence employee"** means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for **you**. This does not include employees while performing duties in connection with the **business** of an **insured**.

10. **"residence premises"** means the one or two family dwelling, other structures, and grounds or that part of any other building where **you** reside and which is shown in the **Declarations**.

11. **"in transit"** means the period of time during which the leveling jacks or blocks are removed and all utilities are disconnected for the purpose of transporting the home from one location to another, whether or not momentarily in motion and whether on public roadway or otherwise. However, the home will not be considered to be in transit if it is being moved as an emergency measure to protect it from impending loss from an insured peril.

12. **"vacant"** means without human inhabitants and without enough furnishings and other personal property to show an intent to return and occupy the premises.

13. **"unoccupied"** means temporarily without human inhabitants, but containing enough furnishings with the other personal property to show an intent to return and occupy the premises.

## SECTION I

## PHYSICAL DAMAGE COVERAGES

## COVERAGE A—MANUFACTURED HOME

**We** cover:

1. the manufactured home shown on the **Declarations** page used mainly as a private residence,

(4)

including structures attached to the dwelling;

2. parts, equipment, and accessories which are built into and form a permanent part of the home, not to include swimming pools, outdoor antennas, satellite dish systems and related equipment;

3. appliances, furniture, and equipment which are furnished by the manufacturer or dealer with the home, as long as these items are described in the Certificate of Origin or Sales Invoice, and remain a part of the home at the time of the loss;

4. fuel or gas drums connected to and furnishing heat or cooking fuel to the home, awnings, steps, tie-down equipment, foundations, supports, skirting and water pumps;

5. materials and supplies on or next to the **residence premises** for use in the construction, alteration, or repair of the home.

## COVERAGE B—OTHER STRUCTURES

**We** cover:

1. private **garages**, buildings and other structures on the **residence premises** which are detached from the home. Swimming pools are considered to be other structures.

2. materials and supplies on or next to the **residence premises** for use in the construction or alteration or repair of **private garages,** buildings or other structures included in 1, if these materials and supplies are owned by **you**.

A private **garage,** building or other structure connected to the home by only a fence, utility line or similar link is considered detached.

**We** do not cover:

1. other structures not permanently attached to or otherwise forming a part of the realty;

2. other structures used in whole or in part for **business** purposes;

3. other structures rented to or held for rental for a person that is not a tenant of the dwelling, unless used solely as a private garage;

4. outdoor antennas, satellite dish systems and related equipment;

5. any structure specifically insured on this or any other policy.

(5)

## COVERAGE C—PERSONAL PROPERTY

Subject to limitations set forth in this policy, **we** cover personal property owned or used by an **insured** while it is anywhere in the world. If **you** do not own the home and are currently renting, leasing or otherwise considered a tenant, this coverage includes structures not permanently attached to or otherwise forming a part of the realty, not to exceed $2,000. At **your** request, **we** will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured**. Also, if **you** ask **us** **we** will cover personal property of a house guest or **residence employee** in any residence occupied by an **insured** person.

Regardless of the limit of liability shown on **your** Declaration under Coverage C, the most **we** will pay for personal property situated at any **insured's** residence other than the **residence premises** is 10% of Coverage C limit. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after **you** start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in **your** immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

If **you** do not own the **residence premises**, **we** cover additions, alterations, fixtures, improvements or installations, made at **your** expense, to that part of the **residence premises** used exclusively by **you**. Up to 10% of the limit of liability for Coverage C may be applied.

### Special Limits of Liability Under Coverage C

These limits do not increase the Coverage C limit of liability. The special limit for each following category is the total limit for each loss for all property in that category:

1. **$100** on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. **$500** on securities, accounts, deeds, abstracts, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps.

3. **$500** on watercraft, including their trailers, furnishings, equipment and outboard motors.

4. **$500** on trailers not used with watercraft.

(6)

**business**.

6. **$500** for loss by theft of jewelry, watches, gems, furs, and precious and semi-precious stones.

7. **$2,500** for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.

8. **$1,000** for loss by theft of guns and their accessories.

9. **$500** on outside radio or television antennas or towers.

10. **$3,000** on electronic data processing equipment including computers, computer equipment, hardware, software and other recording or storage media used with that equipment while located principally on the **residence premises**. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing, or maintenance. An **insured** student's equipment and media are covered for this $3,000 limit while at a school residence away from home.

### Property Not Covered Under Coverage C

**We** do not cover:

1. property covered elsewhere in this policy or by any scheduled insurance;

2. animals, birds or fish, or reptiles;

3. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. **We** do cover those used solely for the service of the **insured location** and not licensed for use on public highways up to a maximum limit of $3,000;

4. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar detectors, antennas and other similar equipment. This exclusion applies only while the property is located in or upon a **motor vehicle**, watercraft or aircraft, whether attached or not;

5. devices or instruments for the recording or reproduction of sound permanently installed in a motor vehicle or watercraft. Also, we do not cover while in the motor vehicle or watercraft: tapes, compact disc, wires, records or other mediums that may be used with these devices or instruments;

(7)

6. aircraft and parts;

7. property of roomers, boarders and other tenants, except property of roomers and boarders related to an **insured**;

8. property regularly rented to others or held for rental for others by an insured. This exclusion does not apply to property of an **insured** in a sleeping room rented to another by an **insured**;

9. property rented to others or held for rental for others away from the **residence premises**;

10. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records;

11. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market;

12. satellite dish systems and related equipment;

13. swimming pools and related equipment permanently attached to the realty.

## COVERAGE D—LOSS OF USE

The limit of liability for Coverage D is the total limit for all the following coverages (no deductible applies to Coverage D):

1. **Additional Living Expense.** If a loss covered under this Section makes the **residence premises** uninhabitable, **we** cover any necessary increase in living expenses incurred by **you** so that **your** household can maintain its normal standard of living. Payment shall be for the shortest time required to repair or replace the premises or, if **you** permanently relocate, the shortest time required for **your** household to settle elsewhere. This period of time is not limited by expiration of this policy. **Our** payments end when **your** home is repaired or replaced or seven days after **we** have offered to make a reasonable cash settlement.

2. **Fair Rental Value.** If a loss covered under this Section makes that part of the **residence premises** rented to others or held for rental by **you** uninhabitable, **we** cover its fair rental value. Pay-

(8)

ment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable. **Our** payments end when that part of the home rented or held for rental is repaired or replaced or seven days after **we** have offered to make a reasonable cash settlement.

3. **Prohibited Use.** If a civil authority prohibits **you** from use of the **residence premises** as a result of direct damage to neighboring premises by a Loss Insured in this policy, **we** cover any resulting Additional Living Expense and Fair Rental Value for a period not exceeding two weeks during which use is prohibited.

**We** do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Fire Department Charges. We** will pay up to $500 for **your** liability under an agreement for service charges made by a fire department when called to protect **your** covered property from a fire. Payments are in addition to the amount of insurance applying to the loss. In no event shall **our** limit of liability exceed $500 for any one fire. No deductible applies to this coverage.

2. **Emergency Removal Expense. We** will pay up to $500 of the cost to remove and return **your** home because of danger from a peril **we** insure against. No deductible applies to this coverage.

3. **Property Removed.** Covered property, while being removed from a premises endangered by a Peril Insured Against, is covered for direct loss from any cause. This coverage also applies to the property for up to 30 days while removed. This coverage does not increase the limit of liability applying to the property covered.

4. **Debris Removal. We** will pay the reasonable expenses **you** incur in the removal of debris of covered property when coverage is afforded for the peril causing the loss. This expense is included in the limit applying to the damaged property. When the amount payable for the property damage plus the debris removal expense ex-

(9)

ceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. **We** will pay up to $500 in the aggregate for each loss to cover the reasonable expenses **you** incur in the removal of tree debris from the **residence premises** when the tree has damaged property covered under Coverage A and Coverage B.

5. **Trees, Shrubs and Other Plants. We** cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or Malicious Mischief or Theft. The limit for the coverage, including the removal of debris, shall not exceed 5% of the limit applying to the dwelling. **We** will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. **We** do not cover property grown for **business** purposes.

6. **Reasonable Repairs. We** pay the reasonable cost an **insured** incurs for necessary repairs made only to protect covered property from further damage if the peril causing the loss is also covered. This coverage does not increase the limit of liability applying to the property being repaired.

7. **Power Interruption. We** cover loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Peril Insured Against and the power source away from the **residence premises** must remain energized.

8. **Refrigerated Products.** Coverage C is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If power failure or mechanical failure is known to **you**, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a loss insured.

(10)

9. **Credit Card, Bank Fund Transfer, Forgery and Counterfeit Money.**

   a. **We** will pay up to $1,000 for:

     (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, **we** do not cover use by an **insured** or anyone else;

     (2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

     (3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

   No deductible applies to this coverage.

   b. **We** do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

   c. Defense:

     (1) **We** may make any investigation and settle any claim or suit that **we** decide is appropriate. **Our** obligation to defend claims or suits ends when the amount **we** pay for the loss equals **our** limit of liability.

     (2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, **we** will provide a defense. This defense is at **our** expense by counsel of **our** choice.

     (3) **We** have the option to defend at **our** expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

10. **Arson Award. We** will pay $1,000 for information which leads to an arson conviction in connection with a fire loss covered by this policy. Regardless of the number of persons providing information, **our** limit shall not be increased.

(11)

# SECTION I—PERILS INSURED AGAINST

### COVERAGE A—MANUFACTURED HOME AND COVERAGE B—OTHER STRUCTURES

**We** cover accidental direct physical loss from any cause to the property described in Coverage A and in Coverage B except as specifically excluded in the Exclusions section of this policy.

### COVERAGE C—PERSONAL PROPERTY

**We** cover accidental direct physical loss to the property described in Coverage C caused by:

1. **Fire.**
2. **Lightning.**
3. **Windstorm or hail.**

   This peril does not include loss to the property contained in a home or building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the home or building causing an opening in the roof of an outside wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment and outboard motors only while inside a fully enclosed building.

4. **Explosion.**
5. **Riot or civil commotion.**
6. **Aircraft**, including self-propelled missiles and spacecraft.
7. **Vehicles**, meaning an actual impact by a vehicle with covered property.
8. **Smoke**, meaning sudden and accidental damage from smoke. This peril does not include loss caused by smoke from agricultural smudging or industrial operations.
9. **Vandalism or malicious mischief.**

   This peril does not include loss on the **residence premises** if, immediately before the loss, the home has been **vacant** for more than 30 days or **unoccupied** for more than 120 days. However, this peril does apply to a loss if **we** learn in advance that the home is going to be **vacant** or **unoccupied** and give **our** permission. A home being constructed is not considered **vacant** or **unoccupied**. This peril does not include loss

(12)

caused by any resident of the residence premises.

10. **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

This peril does not include:

a. loss of a precious or semi-precious stone from its setting;

b. loss caused by theft:

  (1) committed by an **insured** or by any other person regularly residing on the **insured location**;

  (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

  (3) from the part of a **residence premises** rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

    (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

    (c) of securities, checks and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

c. loss caused by theft that occurs away from the **residence premises** of:

  (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Regardless of any limit of liability shown on **your Declarations**, the most **we** will pay for a student's property while at a school residence away from home is 10% of **your** Coverage C limit.

  (2) watercraft, including its furnishings, equip-

(13)

ment and outboard motors; or

(3) trailers and campers designed to be pulled by, or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

11. **Falling Objects.**

This peril does not include loss to property contained in a home or building unless the roof or an outside wall is first damaged by the impact of a falling object. Damage to the falling object itself is not included.

12. **Weight of ice, snow or sleet** causing damage to property contained in a home or building.

13. **Collapse of a manufactured home or building, or any part of a manufactured home or building.**

This peril does not include settling, cracking, shrinking, bulging or expansion.

14. **Sudden and accidental discharge or overflow of water or steam** from within a plumbing, heating or air conditioning system or from within household appliances.

This peril does not include loss:

a. on the **residence premises** if immediately before the loss, the home has been **vacant** for more than 30 days or **unoccupied** for more than 120 days. However, this peril does include the loss if **we** learn in advance that the home is going to be **vacant** or **unoccupied** and **we** give **our** permission. A home being constructed is not considered **vacant** or **unoccupied;**

b. to the system or appliance from which the water or steam escapes;

c. caused by or resulting from freezing; or

d. on the **residence premises** caused by accidental discharge or overflow that occurs off the **residence premises.**

15. **Sudden and accidental tearing apart, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system or of appliances for heating water.

(14)

This peril does not include loss caused by or resulting from freezing.

**16. Breakage of glass or safety glazing material** meaning damage to the personal property caused by breakage of glass constituting a part of the home or building on the **residence premises**, but excluding loss or damage to the glass or safety glazing material.

**17. Freezing of a plumbing, heating or air conditioning system or of a household appliance.**

This peril does not include loss on the **residence premises** while the dwelling is **vacant, unoccupied** or being constructed, unless **you** have used reasonable care to:

(a) maintain heat in the building; or

(b) shut off the water supply and drain the system and appliances of water.

**19. Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of electrical currents artificially generated. There is no coverage for loss to a tube, transistor, wafer, card, chip, integrated circuit or similar electronic circuitry and components.

## SECTION I—EXCLUSIONS

1. **We** do not insure for loss to the property described in Coverage A and in Coverage B either consisting of, or directly and immediately caused by, one or more of the following:

a. Freezing of a plumbing, heating or air conditioning system, automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage, or overflow from within the system or appliance caused by freezing while the home is **vacant, unoccupied** or being constructed. This exclusion does not apply if **you** have used reasonable care to:

(1) maintain heat in the building; or

(2) shut off the water supply and drain the system and appliances of water.

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to pavements, patios, fences, foundations, swimming pools (including pumps and related plumbing), retaining walls, bulkheads, piers, wharves, or docks.

(15)

c. Theft in or to a manufactured home under construction, or of tools, materials and supplies for use in the construction until the home is completed and occupied.

d. Vandalism and malicious mischief or breakage of glass or safety glazing material if, immediately before the loss, the home has been **vacant** for more than 30 consecutive days or **unoccupied** for more than 120 consecutive days. However, **we** provide coverage if **we** learn in advance that the home is going to be **vacant** or **unoccupied** and **we** give **our** permission. A manufactured home being constructed is not considered **vacant** or **unoccupied**;

e. Continuous or repeated seepage or leakage of water or steam from a:

   (1) heating or air conditioning or automatic fire protective sprinkler system;

   (2) household appliance; or

   (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixtures, including their walls, ceilings or floors;

   which results in deterioration, corrosion, rust, mold, or wet or dry rot. If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. **We** do not cover loss to the system or appliance from which the water or steam escaped;

f. wear, tear, marring, deterioration, inherent vice, latent defect and mechanical breakdown;

g. rust, mold, wet or dry rot;

h. contamination, smog, smoke from agricultural smudging or industrial operations;

i. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

j. birds, vermin, rodents, insects, domestic animals, or reptiles.

However, **we** do insure for any ensuing loss from items a. through j. unless the loss is itself a loss not insured by this section.

(16)

2. **We** do not insure under any coverage for loss (including collapse of an insured building or part of a building) which would not have occurred in the absence of one or more of the following excluded events:

a. **Ordinance or Law**, meaning loss or increased cost due to enforcement of any code, ordinance or law regulating the use, construction, repair or demolition of a building or other structure, unless specifically provided in this policy or by endorsement.

b. **Earth Movement**, meaning any loss caused by, resulting from, contributed to or aggravated by earthquake; the sinking, rising, shifting, expanding or contracting of the earth. Earth movement also means volcanic eruption, explosion or effusion.

   **We** do insure for direct loss by fire, explosion other than explosion of a volcano, theft or breakage of glass or safety glazing materials resulting from earth movement.

c. **Water Damage**, meaning loss caused by:

   (1) flood, surface water, waves, tidal water or overflow of a body of water. **We** do not cover spray from any of these, whether or not driven by wind;

   (2) water which backs up through sewers or drains; or

   (3) water below the surface of the ground, including but not limited to water which exerts pressure on, or seeps or leaks through buildings, sidewalks, driveways, foundations, swimming pools or other structures.

   However, **we** cover resulting direct physical loss caused by the following Perils Insured Against: Fire, Explosion or Theft.

d. **Leakage**, meaning loss or damage due and confined to leakage from rain, sleet or snow, unless coverage is afforded for the peril causing the loss.

e. **Neglect**, meaning any **insured's** failure to use all reasonable means to save and preserve property at and after the time of loss, or when property is put in danger of loss by a Peril Insured Against.

(17)

f. **Transit**, meaning any loss while the manufactured home is **in transit** unless such coverage is specifically assumed by endorsement.

g. **War**, including but not limited to undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and any consequence of any of these. Discharge of a nuclear weapon is considered a warlike act even if accidental.

h. **Nuclear Hazard**, meaning loss or damage caused by nuclear reaction, radiation or radioactive contamination, or any consequence of any of these, all whether directly or indirectly resulting from a Peril Insured Against or other cause of loss under this policy.

i. **Intentional Loss**, meaning any loss arising out of any act committed:

   a. by or at the direction of an **insured**; or

   b. with the intent to cause a loss.

**We** do not insure for such loss excluded under items a. through i. regardless of: a) the cause of the excluded event; or b) other causes of the loss; or c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.

3. **We** do not insure under any coverage for loss consisting of one or more of the items below:

a. **Business Interruption**, meaning loss resulting from the interruption of **business**.

b. **Business Activity**, meaning any loss while the manufactured home is used principally in a **business** activity.

c. **Tires and Wheels**, meaning loss or damage to tires and wheels belonging to the manufactured home unless damaged by fire, malicious mischief or vandalism or unless stolen from premises.

d. **Conversion, Embezzlement or Secretion**, meaning loss due to conversion, embezzlement or secretion by the selling dealer or by any person in lawful possession or custody of the insured property.

e. Conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent,

(18)

or without fault.

   f.  Defect, weakness, inadequacy, fault or un-
soundness in:

     (1) planning, zoning, development, survey-
ing, siting;

     (2) design, specifications, workmanship, con-
struction, grading, compaction;

     (3) materials used in construction or repair; or

     (4) maintenance;

of any property (including land, structures, or
improvements of any kind) whether on or off
the **residence premises**.

   g.  Any peril while the home is located at any
permanent location not described in this policy
if **you** or someone in **your** behalf has not
notified **us** or one of **our** authorized represen-
tatives of such move within 30 days from the
start of the move.

However **we** do insure for any ensuing loss from
items a. through g. unless the ensuing loss is itself
a loss not insured in this section.

4.  **We** do not insure for loss described in paragraphs
1. and 2. immediately above regardless of whether
one or more of the items listed in paragraph 3.
above:

   a.  directly or indirectly cause, contribute to or
aggravate the loss; or

   b.  occur before, at the same time, or after the
loss or any other cause of the loss.

However, **we** do insure for ensuing loss from
items 3e. and 3f. unless the ensuing loss is itself
a loss not insured by this section.

## SECTION I—CONDITIONS

1.  **Insurable Interest and Limit of Liability.** Even
if more than one person or organization has an
insurable interest in the property covered, **we**
shall not be liable:

   a.  to the **insured** for an amount greater than the
**insured's** interest;

   b.  for an amount greater than the loss as com-
puted under the Loss Settlement condition;
nor

   c.  for more than the applicable limit of liability.

(19)

2. **Deductible.** We will pay for a covered property minus the deductible shown in the **Declarations**.

3. **Your Duties After Loss.** After a loss to which this insurance may apply, **you** shall see that the following duties are performed:

   a. give immediate notice to **us** or **our** agent. Also notify the police if the loss is caused by theft or vandalism. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as **we** reasonably require:

     (1) exhibit the damaged property;

     (2) provide **us** with records and documents **we** request and permit **us** to make copies;

     (3) submit to examinations under oath, while not in the presence of any other **insured**, and sign the same; and

     (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so;

   e. submit to **us**, within 60 days after the occurrence, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:

     (1) the time and cause of loss;

     (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

     (3) other insurance which may cover the loss;

     (4) changes in title or occupancy of the property during the term of this policy;

     (5) specifications of any damaged building and detailed estimates for repair of the

(20)

damage;

(6) an inventory of damaged or stolen personal property described in 3.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss;

(8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

4. **Loss Settlement.** Losses will be settled at the actual cash value of the damaged property at the time of loss. Actual cash value includes deduction for depreciation. **We** will not pay an amount exceeding the smallest of the following amounts:

    a. the actual cash value of the property at the time of loss; or

    b. the amount necessary to repair or replace the property.

5. **Loss to a Pair or Set.** In case of loss to a pair or set **we** may elect to:

    a. repair or replace any part to restore the pair or set to its value before the loss; or

    b. pay the difference between actual cash value of the property before and after the loss.

6. **Glass Replacement.** Loss or damage to glass caused by a Peril Insured Against shall be settled on the basis of replacement with safety glazing materials when required by code, ordinance or law.

7. **Change of Home.** Should **you** dispose of the manufactured home described in the **Declarations** and acquire a replacement manufactured home, this policy shall be transferred to cover the replacement home provided **you** notify **us** within 30 days after delivery and pay any additional premium required.

8. **Change of Address. You** or someone in **your** behalf must notify **us** or any of **our** authorized representatives of any change in location of the home within 30 days after the start of such move.

9. **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall

(21)

select a competent, independent appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by **you** and **us**.

10. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

11. **Suit Against Us.** No action shall be brought against **us** unless the **insured** first complies with all the provisions of this policy.

12. **Our Options.** **We** may repair or replace any part of the property damaged or stolen with equivalent property. Any property **we** pay for or replace becomes **our** property.

13. **Loss Payment.** **We** will adjust all losses with **you**. **We** will **pay you** unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after **we** receive **your** proof of loss and:

    a. reach agreement with **you**;

    b. there is an entry of a final judgement; or

    c. there is a filing of an appraisal award with **us**.

14. **Abandonment of Property.** **We** are not obligated to accept any property abandoned by any **insured**.

15. **No Benefit to Bailee.** **We** will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or

(22)

transporting property for a fee regardless of any other provision of this policy.

## Lienholder's Interest.

### a. Benefit Clause.

If this policy is cancelled or not renewed, **we** mail written notice of that fact to any lienholder or additional interest shown on the **Declarations** page. **We** provide coverage under this policy for their benefit only for 10 days after notice is mailed. Proof of mailing must be resolved by reference to **our** usual mailing procedures, and is legally sufficient proof of notice.

### b. Lienholder Clause.

The term "lienholder" means any person, firm, association, corporation or other legal entity named as the lienholder on the **Declarations** page. The designation of a lienholder on the **Declarations** page is considered to be an acknowledgment by **you** that the entity named has a legal interest in the manufactured home or other personal property due to an installment sales contract or other security agreement.

If a lienholder is shown on the **Declarations** page, **we** pay any loss to the lienholder and the **insured**, as interests appear. If more than one lienholder is shown, the order of **our** payment to each lienholder is the same as the order of precedence of the liens.

If **we** deny the insured's claim, that denial does not apply to a valid claim of the lienholder, if the lienholder:

(1) notifies **us** of any change in ownership, occupancy of substantial change in risk of which the lienholder is aware;

(2) pays any premium due under this policy on demand by **us**; and

(3) submits a signed, sworn proof of loss within 60 days after receiving notice from **us** of the **insured's** failure to do so. Section I Policy provisions relating to Appraisal, Suit Against **Us** and Loss Payment apply to the lienholder.

If **we** pay the lienholder for any loss and deny payment to the **insured**:

(23)

(a) **we** are subrogated to all the rights of the lienholder granted under the security agreement on the property; or

(b) at **our** option, **we** may pay to the lienholder the whole principal on the lien plus any accrued interest. In this event, **we** are entitled to receive a full assignment and transfer of the lien and all securities held as collateral to the debt.

Subrogation shall not impair the right of the lienholder to recover the full amount of the lienholder's claim.

## SECTION II

## LIABILITY AND
## OTHER COVERAGES

### COVERAGE E—PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, **we**:

1. pay up to **our** limit of liability for the **damages** for which the **insured** is legally liable; and

2. provide a defense for any loss covered by this policy at **our** expense by counsel of **our** choice. **We** may make any investigation and settle any claim or suit that **we** decide is appropriate. **Our** obligation to defend any claim or suit ends when the amount **we** pay for damages resulting from the loss equals **our** limit of liability.

### COVERAGE F—MEDICAL PAYMENTS TO OTHERS

**We** will pay the necessary medical expenses incurred or medically ascertained within one year from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

(24)

b. is caused by the activities of an insured;

c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the occurrence causing **bodily injury** occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured**.

## SECTION II—ADDITIONAL COVERAGES

**We** cover the following in addition to the limits of liability:

1. **Claims Expenses. We** pay:

   a. **our** expenses and costs charged against **any insured** in any suit **we** defend;

   b. premiums on bonds required in any suit **we** defend, but not for bond amounts greater than the limit of liability for Coverage E. **We** do not apply for or furnish any bond;

   c. reasonable expenses any **insured** incurs, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting **us** in the investigation or defense of any claim or suit at **our** request;

   d. interest on the entire judgment for damages accruing after entry of the judgment and before **we** pay, tender or deposit in court the part of the judgment that is not more than the limit of liability that applies.

2. **First Aid Expenses. We** will pay expenses up to $500 in any one occurrence for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. **We** will not pay for first aid to **you** or any other **insured**.

3. **Damage to Property of Others. We** pay up to $500 per occurrence for **property damage** to property of others caused by any **insured. We** do not pay for **property damage**:

   a. to property covered under Section I of this policy;

   b. caused intentionally by any **insured** who is 13 years of age or older;

   c. to property owned by or rented to any **in-**

(25)

sured, a tenant of any **insured** or a resident in **your** household;

  d.  arising out of:

    1.  **business** pursuits;

    2.  any act or omission in connection with a premises owned or controlled by or rented to any **insured**, other than an **insured location**; or

    3.  the ownership, maintenance, use, loading or unloading of a **motor vehicle**, aircraft or watercraft owned or operated by or rented or loaned to any **insured**.

## SECTION II—EXCLUSIONS

1.  Coverage E and Coverage F do not apply to:

  a.  **bodily injury** or **property damage**:

    (1) which is either expected or intended by an **insured**; or

    (2) which is the result of willful or malicious acts of an **insured**;

  b.  **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

    (1) to activities which are incidental to non-**business** pursuits;

    (2) with respect to Coverage E to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

    (3) to the rental or holding for rental of a residence of **yours**:

      (a) on an occasional basis for the exclusive use as a residence;

      (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

      (c) in part, as an office, school, studio or private garage;

    (4) when the dwelling on the **residence premises** is a two family dwelling and **you** occupy one part and rent or hold for rental the other part; or

  c.  **bodily injury** or **property damage** arising out

(26)

of rendering or failing to render profes-
sional services;

d. **bodily injury** or **property damage** arising out
of any premises owned or rented to an **in-
sured** which is not an **insured location**. This
exclusion does not apply to **bodily injury** to a
**residence employee** arising out of and in the
course of the **residence employee's** employ-
ment by an **insured**;

e. **bodily injury** or **property damage** arising out
of the ownership, maintenance, use, loading
or unloading of:

(1) an aircraft;

(2) a **motor vehicle** owned by, operated by,
rented to or loaned to an **insured**; or

(3) a watercraft owned by, operated by, rented
to or loaned to an **insured**:

(a) if it has inboard or inboard-outdrive
motor power of more than 50 horse-
power;

(b) which is a sailing vessel, with or with-
out auxiliary power, 26 feet or more in
overall length;

(c) powered by one or more outboard
motors with more than 25 total horse-
power owned by an **insured**; or

(d) designated as an airboat, air cushion,
jet ski or similar type of craft.

This exclusion does not apply to **bodily injury**
to a **residence employee** arising out of and in
the course of the **residence employee's** em-
ployment by an **insured**. Exclusion e.(3) does
not apply while the watercraft is on the **resi-
dence premises**;

f. **bodily injury** or **property damage** arising out
of the entrustment by an **insured** to any
person any of the following:

(1) an aircraft;

(2) a watercraft; or

(3) a **motor vehicle** or any other motorized
land conveyance;

g. **bodily injury** or **property damage** caused
directly or indirectly by war, including unde-
clared war, or any warlike act including de-
struction or seizure or use for a military pur-

(27)

pose, or any consequence or release or discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to **you** or any **insured** within the meaning of part a. or b. of the definition of **insured**.

i. **bodily injury** or **property damage** arising out of the transfer by an insured of any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, to any other person.

j. **bodily injury** or **property damage** arising out of the use of the **insured location** for hunting by anyone other than an **insured**.

k. **bodily injury** or **property damage** arising out of the care or custody of animals not owned by an **insured**.

l. **bodily injury** or **property damage** arising out of sexual harassment, sexual molestation, corporal punishment or physical or mental abuse.

m. actual or alleged **bodily injury** or **property damage**, arising out of lead and/or asbestos, including, but not limited to, the ingestion, inhalation or absorption of lead and/or asbestos in any form:

(1) any loss, cost of expense arising out of any request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effect of any of the above; or

(2) any loss, cost of expense arising out of any claim or suit by or on behalf of a governmental authority for damages to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effect of any of the above.

n. **bodily injury** or **property damage** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by Federal Food and Drug Laws. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate

(28)

ing the orders of a licensed physician.

o. actual or alleged **bodily injury** or **property damage**, arising out of slander, libel, fraud, misrepresentation or land line disputes.

p. any loss caused by any **pollutants** to land, water or air, including the expense of complying with any governmental order or judgment to test for, mitigate or eliminate such **pollutants**.

2. Coverage E does not apply to:

   a. liability

      (1) for **your** share of any loss assessment charged against all members of an association of property owners; or

      (2) assumed under any unwritten contract or agreement, or by agreement, or by contract or agreement in connection with a **business** of the **insured**;

   b. **property damage** to property owned by an **insured**;

   c. **property damage** to property rented to, occupied or used by or in the care of an **insured**. This exclusion does not apply to property damage caused by fire, smoke or explosion;

   d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

   e. **bodily injury** or **property damage** for which an **insured** under this policy is also an **insured** under a nuclear energy liability policy or would be an **insured** but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage F does not apply to **bodily injury**:

   a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

(29)

b.  to a person eligible to receive any benefits
    required to be provided or voluntarily provided
    under any workers' compensation, non-occu-
    pational disability or occupational disease law;

c.  from nuclear reaction, radiation or radioactive
    contamination, all whether controlled or un-
    controlled or however caused, or any conse-
    quence of any of these;

d.  to a person regularly residing on any part of
    the **insured location**, other than a **residence
    employee** of an **insured**.

## SECTION II—CONDITIONS

1.  **Limit of Liability.** The Coverage E limit is shown
    in the **Declarations**. This is **our** limit for all
    damages from each occurrence regardless of the
    number of **insureds**, claims made or persons
    injured. All **bodily injury** and **property damage**
    resulting from any one accident or from continu-
    ous or repeated exposure to substantially the
    same general conditions shall be considered to
    be the result of one occurrence.

    The Coverage F limit is shown in the **Declara-
    tions**. This is **our** limit for all medical expense for
    **bodily injury** to one person as the result of one
    accident.

2.  **Severability of Insurance.** This insurance ap-
    plies separately to each **insured**. This condition
    shall not increase **our** limit of liability for any one
    occurrence.

3.  **Your Duties After Loss.** In case of an accident
    or occurrence, the **insured** shall perform the
    following duties that apply. **You** shall cooperate
    with **us** in seeing that these duties are performed:

    a.  give written notice to **us** or **our** agent as soon
        as practicable, which sets forth:

        (1) the identity of this policy and of the **in-
            sured**;

        (2) reasonably available information on the
            time, place and circumstances of the acci-
            dent or occurrence; and

        (3) names and addresses of any claimants
            and available witnesses;

    b.  forward to **us** every notice, demand, sum-
        mons or other process relating to the accident
        or occurrence;

(30)

in the presence of any other **insured**, and sign the same;

  d.  at **our** request, assist in:

   (1) making settlement;

   (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

   (3) the conduct of suits and attend hearings and trials; and

   (4) securing and giving evidence and obtaining the attendance of witnesses;

  e.  under the coverage "Damage to Property of Others":

   (1) submit to **us** within 60 days after the loss, a sworn statement of loss; and

   (2) exhibit the damaged property if within the **insured's** control;

  f.  the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

**4. Duties of an Injured Person—Coverage F.** The injured person or someone acting on behalf of that person shall:

  a.  give **us** written proof of claim, under oath if required, as soon as practicable; and

  b.  execute authorization to allow **us** to obtain copies of medical reports and records.

The injured person shall submit to physical examination by a physician selected by **us** when and as often as **we** reasonably require.

**5. Payment of Claim—Coverage F.** Payment under this coverage is not an admission of liability by an **insured** or **us**.

**6. Suit Against Us.** No action shall be brought against **us** unless there has been compliance with all the provisions of this policy.

No one shall have the right to join **us** as a party to an action against an **insured**. Further, no action with respect to Coverage E shall be brought against **us** until the obligation of the **insured** has

(31)

been determined by final judgement or agreement signed by **us**.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve **us** of **our** obligation under this policy.

8. **Other Insurance—Coverage E**. This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II—CONDITIONS

1. **Policy Period**. This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II, which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** If **you** or any other **insured** under this policy has concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss, then this policy will not provide **you** or any other **insured** coverage for any loss incurred and may be rescinded.

3. **Liberalization Clause.** If **we** revise this policy to provide more coverage without additional premium charge, **your** policy will automatically provide the additional coverage as of the day the revision is effective in **your** state.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by **us** to be valid. **Our** request for an appraisal or examination shall not waive any of **our** rights.

5. **Cancellation.**

   a. **You** may cancel this policy at any time by notifying **us** in writing of the date cancellation is to take effect.

   b. **We** may cancel this policy only for the reasons stated in this condition. We will notify **you** in writing of the date cancellation takes effect. This cancellation notice may be delivered to **you**, or mailed to **you** at **your** mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice:

      (1) When **you** have not paid the premium, **we** may cancel at any time by notifying **you** at least 10 days before the date cancellation

(32)

takes effect. This condition applies when the premium is payable to **us** or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with **us**, **we** may cancel for any reason. **We** may cancel by notifying **you** at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with **us**, **we** may cancel:

    (a) if there has been a material misrepresentation of fact which, if known to **us**, would have caused **us** not to issue this policy;

    (b) if the risk has changed substantially since the policy was applied for and originally issued; or

    (c) if **you** fail to maintain affiliated membership in the Alabama Farmers Federation, or its successor.

If **we** cancel, **we** will deliver or mail to **you** notice at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When **you** request cancellation, the return premium will be based on **our** rules for such cancellation. The return premium may be less than a full pro rata refund. When **we** cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to **us**. In such cases, **we** will refund it within a reasonable time after the date cancellation takes effect.

6. **Non-Renewal.** **We** may elect not to renew this policy. **We** may do so by delivery to **you**, or mailing to **you** at **your** mailing address shown in the **Declarations**, written notice. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Automatic Termination.** If **we** offer to renew or continue **your** policy, it may be continued in force for successive policy periods by payment of the

(33)

required premium. This offer will be mailed to you at **your** mailing address shown on the **Declarations** or to a lienholder designated by **you**. This policy will automatically terminate at the end of the current policy period if the required renewal premium is not paid by or for **you** and accepted by **us** on or before the expiration of the current policy period. Failure to pay the required renewal premium shall mean **you** have not accepted **our** offer.

8. **Assignment.** Assignment of this policy shall not be valid unless **we** give **our** written consent.

9. **Our Right to Recover Our Payment.** If **we** make payment under this policy and the person to or for whom payment was made has a right to recover damages from another, **we** shall be subrogated to that right. That person shall do whatever is necessary to enable **us** to exercise **our** rights and shall do nothing after loss to prejudice them.

   If **we** made a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall hold in trust for **us** the proceeds of the recovery and shall reimburse **us** to the extent of **our** payment, costs and fees.

10. **Death.** If any person named in the **Declarations** or the spouse, if a resident of the same household, dies:

    a. **we** insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

    b. **insured** includes:

       (1) any member of **your** household who is an **insured** at the time of **your** death, but only while a resident of the **residence premises**; and

       (2) with respect to **your** property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

11  **Inspection. We** are permitted but not obligated to inspect the **insured's** property and operations. **Our** inspection does not warrant that the property or operations are safe or healthful or are in compliance with any law, rule or regulation.

(34)

12. **Overlapping Coverages.**  Even though more than one coverage of this policy may insure the same loss, accident or loss, **we** pay for no more than the actual loss, damage or injury sustained.

13. **Conformity With State Law.**  When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

## MUTUAL CONDITIONS

### MEMBERSHIP

While this policy is in force the **insured** named in the **Declarations** is a member of the insurer issuing this policy with all rights and obligations of such membership, including the right to receive any dividends declared by its Board of Directors payable on this policy or policies of like kind and classification as this policy. The annual meeting of members of the insurer shall be held at its executive offices in Montgomery, Alabama, on the fourth Thursday of April in each year at 11:00 a.m., unless changed at the preceding annual meeting of members or by the Board of Directors and notice given.

**This is a non-assessable policy.**

Secretary                 President

(35)